WILLIAM HENRY NORRIS and others *vs.* THE MAYOR
AND CITY COUNCIL OF BALTIMORE.

*Question whether in the Condemnation of property for Opening
a street, the Damages assessed to the Owners as Compensation,
bear Interest—Sec. 9 of Art. 43 of the Baltimore City Code of
1869—City Court without Authority to Confirm, or Enter a
judgment upon, the Inquisition of a Jury assessing damages to
the Owner of property for Opening a street—The Act of 1870,
ch. 371, not applicable to the Condemnation and Opening of a
street in the City of Baltimore—Mandamus—Liability of the
City in an action for Damages in cases of Unnecessary Delay
in taking possession of Property condemned for Opening a
Street—Measure of Damages in such cases.*

A lot of ground in the city of Baltimore was surrendered by the owners to the
Commissioners for opening streets, and compensation claimed for the whole
lot. The lot was valued by the Commissioners and damages assessed there-
for. From their assessment an appeal was taken to the City Court, and upon
trial, the jury on the 22nd of January, 1874, found an inquisition, ascer-
taining the amount of damages to which the owners were entitled. This
inquisition was confirmed by an order of Court, and *judgment* entered thereon.
The amount found by the inquisition was paid by the city to the owners on
the 4th of December, 1874. At the time of the payment the owners claimed
interest from the 22nd of January, 1874, to the date of the payment, which
the city refused to pay. On a *mandamus* filed by the owners to compel the
city to pay the interest so claimed, it was HELD :

1st. That the amount found by the inquisition of the jury did not bear interest.

2nd. That sec. 9 of Art. 43 of the City Code, under which alone the City Court
was authorized to act in taking the inquisition, gave it no power to pass an
order of confirmation, or to enter up a judgment upon the inquisition of
the jury, and such entries were therefore unauthorized and inoperative.

3rd. That the Act of 1870, ch. 371, providing for the rendition of judgments upon the return and ratification of inquisitions in cases of condemnations of lands, has no application to these proceedings.

4th. That the owners were not entitled to a *mandamus* to recover the interest, either as forming part of the just compensation secured by the Constitution, or as in the nature of interest on a judgment.

5th. That the city is not responsible for losses occasioned by necessary delays in taking possession of property for a proposed improvement, but when the assessments have all been finally settled, the city can then fairly exercise its election to abandon the enterprise or pay the assessments and proceed with the work.

6th. That for losses to owners occasioned by delay, subsequently occurring, through failure of the city authorities thus to abandon or pay, it is just and right the city should be held liable in an action for damages.

7th. That as to what the measure of damages should be, no general rule applicable to all cases could be laid down. But where the property as in this case consisted of a vacant and unimproved lot, from which the owners derived neither rents nor profits, the standard of damages should be the interest upon the market value of the property, as ascertained by the inquisition, for the time the delay was without justifiable excuse.

8th. But, that a *mandamus* would not lie to enforce its payment, until in such an action the jury had ascertained the amount by their verdict, and a judgment thereon had been rendered against the city.

APPEAL from the Baltimore City Court.

The appeal in this case was taken from an order of the Court below, of the 26th of February, 1876, dismissing the appellants' petition for a *mandamus.* The facts of the case are sufficiently disclosed in the opinion of this Court.

The cause was argued before BARTOL, C. J., MILLER and ROBINSON, J., and the decision was participated in by BRENT and ALVEY, J.

*Robert D. Morrison* and *H. Clay Dallam,* for the appellants.

In most cases the question arises as to when the property is "taken." Most of the judicial decisions heretofore have

held that the property is not "taken" until it is actually used for the purpose for which it is condemned. That until then the title remains in the owners. But the Supreme Court of the United States, in *Pumpelley vs. Green Bay Co.*, 13 *Wall.*, 177, seems to have become dissatisfied with the technical and narrow principle which they originally laid down in *Balto & Susq. R. R. Co. vs. Nesbitt*, 10 *How.*, 395. They therefore recognize that these Constitutional provisions are inserted to protect the individual against the community, and are to be favorably construed in behalf of owners. They therefore held that if the just rights of ownership are interfered with, then this result should impose the obligation of having *taken* the property on the party who effects this interference.

This was not a verdict in an ordinary action for indebtedness, in which cases they are not final and certain so as necessarily to bear interest. *Baltimore City Pass. Railway Co. vs. Sewell*, 37 *Md.*, 443.

If in such cases the law under which they had been instituted had provided that the verdicts should be "final and conclusive in every respect," it is conceived that this Court would have ruled differently in the cited case.

The grounds and principles in ordinary contentions as to whether interest is chargeable, have no application here, or at most only analogically. This is a distinct and peculiar contract, and is governed altogether by the law regulating sales of real estate, especially as affected by the constitutional clause that "just compensation" shall be made to the compulsory vendor. It is a sale of realty on compulsion. What then is a "just compensation" as fixed by the law of sales, when the sale is made for cash as of a given date and without compulsion? Certainly "just compensation" has not two significations, accordingly as the contractor is a mere fellow-citizen, or one coming with the powers and authority of eminent domain.

Cash value at a certain date implies ordinarily that the contract is to be completed near that date, and with inter-

est to the vendor from that date. Such is the rule between ordinary vendors and vendees. 2 *Dillon on Mun. Corp., secs.* 453, 480, 487; *Graff vs. M. & C. Council of Balt.,* 10 *Md.,* 544.

The judgment being in fact given, and still subsisting unappealed from, it carries interest under the law giving interest on judgment, irrespective of the considerations for which it was given. 1 *Dillon on Munic. Corp., sec.* 414; *Langdon vs. Town of Castleton,* 30 *Vt.,* 285, 296; *City of Phila. vs. Dyer,* 41 *Penn.,* 470; *Rhys vs. Dare Valley R. R.,* 19 *Eq. Cases,* 94, 95, (*L. R.*); *Wagner vs. Cohen,* 6 *Gill,* 100; *Gwinn vs. Whittaker,* 1 *H. & J.,* 754; *Montgomery vs. Murphy,* 19 *Md.,* 580-1; *Kemp vs. Cook,* 18 *Md.,* 139; *Henderson vs. Gibson,* 19 *Md.,* 238; *Art.* 29, *sec.* 15, *of the Code.*

The true rule of assessing damages has been laid down by this Court, in *Moale vs. Mayor, &c. of Balt.,* 5 *Md.,* 314.

*Mandamus* is the proper remedy, with or without the judgment. It is the only proper remedy against municipal corporations. When the claim against such corporation is for ordinary indebtedness, a judgment is necessary to give certainty as to the validity and amount of the claim—and in general the character of the claim against such corporations requires this preliminary sanction as to its justice and amount.

But what is the use of a preliminary judgment, when validity and certainty have been already determined by an inquisition or award which by law is to be "final and conclusive in every respect?" How is it "final and conclusive" if a judgment is necessary to make it certain, final and conclusive? Unless, therefore, the proceeding of condemnation under the Ordinance is a miserable fraud upon an unwilling vendor in so conducting it that his "just compensation" is left uncertain, not final, and inconclusive, the inquisition must be in his behalf, unless appealed from, all that is necessary as a ground for process to obtain the "just

compensation '' when his property has been taken.   *Chicago vs. Hasley,* 25  *Ill.,* 595 ;  *Monaghan vs. Phila.,* 28 *Penn.,* 207 ;  *Von Hoffman vs. City of Quincy,* 4  *Wall.,* 535 ; 2 *Dillon on Munic. Corp., sec.* 685 ;  *High's Ex. Leg. Remedies, sec.* 5 ;  *Commonwealth vs. Dennison,* 24  *How.,* 66 ; *Gilman vs. Bassett,* 33  *Conn.,* 298.

It is not denied that, if the judgment subsists, *mandamus* is the proper remedy.


*John V. L. Findlay,* for the appellee.

*Mandamus* will not  lie when the act sought  to be compelled  is the  payment of money, if there is a specific and adequate civil remedy at law.   *Ev. Prac.,* 524,

To  discriminate  the  principle  upon which  *mandamus* proceeds, the following  cases are cited  to show when the writ will  be  granted.    *High on Ex. Legal Remedies, sec.* 365 ; 2  *Dil.  Munic. Corp., sec.* 686,  and cases cited in note.   *King vs. St. Catherine's Dock Co.,* 4  *Barn. & Adol.,* 360 ;  *Wormwell vs. Hailstone,* 6  *Bing.,* 668-676.

The  liability  of the  party  against whom  the writ is prayed,  must  first  be  liquidated,  ascertained  or  determined, before the  petitioner has  the requisite legal status to invoke the aid of *mandamus.*

But  the City is not  liable for the  interest claimed, 1st. Because  it paid  the amount  assessed on  the  inquisition before it was required  to do so by law.

2nd.  Because, under  the  law  and  Ordinances  of  the City, and  the Constitution of  the State,  the City could not take possession of  the ground, until it made tender or paid  the amount of damages assessed on  the  inquisition. *Cons.* 1867,  *Art.* 3,  *sec.* 40 ;  *Art.* 43,  *City Code,* 1869, *sects.* 7, 9, 14, *pp.* 831, 834, 837.

3rd.  Because  the City had  the right  to decline to take the property of  appellants, at any time  before such tender or  payment.   *Graff vs. Mayor and City Council,* 10  *Md.,* 544, 551, 552, 553, 554 ;  *State Relation of McClellan vs. Graves, et al.,* 19  *Md.,* 352.

Norris, *et al. vs.* Mayor, &c. of Baltimore.

4th. Because the title to the property, and the use and enjoyment thereof, remained in the appellants, until tender or payment by the City. *Balt. and Susq. R. R. Co. vs. Nesbitt,* 10 *How.,* 395.

5th. Because there is no judgment *quod recuperet* in this case, and could be none, but only a valuation of the ground, to be taken or abandoned, as the City, acting for the public good, saw fit. *Merrick, Adm'r of Warfield, vs. Mayor, &c. of Baltimore,* 43 *Md.,* 219 ; *Sewell vs. City Passenger R. W. Co.,* 37 *Md.,* 443-456-457 ; *Code Pub. Gen. Laws, Art.* 29, *sec.* 15.

MILLER, J., delivered the opinion of the Court.

On the 18th of March, 1872, an Ordinance was passed by the Mayor and City Council of Baltimore, providing for the condemnation and opening of Laurens street from Pennsylvania avenue to Madison avenue. The appellants were the owners of a vacant lot through which this improvement extended, but the whole of it was not needed for the bed of the proposed street. In this state of case the owners surrendered the whole lot to the Commissioners for opening streets, and claimed compensation for the whole of it, as they had a right to do under the existing Ordinances of the City. *Baltimore City Code of* 1869, *Art.* 43, *sec.* 7, *page* 831. The Commissioners then proceeded to value the lot and assess the damages, and from their assessment the owners took an appeal to the City Court, and upon trial, the jury, on the 22nd of January, 1874, found an inquisition assessing the damages for the lot at $22,567.50. From this no appeal was taken by either party to this Court. This amount was paid by the City to the owners on the 4th of December, 1874. At the time of this payment the owners claimed *interest* on this sum from the 22nd of January to the 4th of December, 1874, which the City refused to pay, and the questions now arising and to be decided are,

1st.  Are the owners entitled to this interest or its equivalent by way of damages, and can they recover it from the City in any form of action ?

2nd.  If so entitled can they enforce its payment by *mandamus*, the process they have resorted to in this case ?

It is insisted on the part of the appellants, that interest in such a case when payment is thus delayed, is a necessary ingredient of the "just compensation" provided by the Constitution for taking private property for public use.

We cannot, however, so regard it.   It has long been the settled law of Maryland, that both private and municipal corporations, when authorized to exercise the power of eminent domain, have the right to renounce the inquisition and select a more eligible route, or to wholly abandon the improvement or enterprise, at any time before actual payment of the *amount assessed*, either by commissioners or jury, and until that time no title to the property condemned vests in the corporations.   *Balto. & Susq. R. R. Co., vs. Nesbitt,* 10 *How.,* 395 ; *Graff vs. Mayor & C. C. of Balt.,* 10 *Md.,* 544 ; *State, ex rel. of McClellan vs. Graves,* 19 *Md.,* 351 ; and *Merrick, Adm'r of Warfield vs. Mayor & C. C. of Balt.,* 43 *Md.,* 219.

But when this sum is paid or tendered, the title vests, and the constitutional requirement is gratified.   Nothing more than this sum can, in any case, be demanded by the property owner, as and  for the compensation which the Constitution secures to him.   This we consider to be the firmly established law of this State.   No other answer than this need therefore be made to the very able argument of the appellants' counsel, as to what constitutes a *taking* of property under this provision.   We may remark, however, that we have seen no case, and think none can be found, which has gone to the extent of deciding that the mere assessment of damages by commissioners or a jury constitutes such taking.   Such assessment is simply a mode prescribed by law, for ascertaining the value of the property

Norris, *et al. vs.* Mayor, &c. of Baltimore.

to be taken, or the damages that will be sustained by the taking. It is a step preliminary to the taking, and not the taking itself. It has also been argued, that the terms in the Ordinance, regulating proceedings for opening streets. (*City Code, Art.* 43, *sec.* 9, *page* 834,) which declares that the assessment of the commissioners, or the inquisition of the jury unappealed from, "shall be final and conclusive in every respect," give a peculiar potency to this finding, and that the facts shown by the docket entries, that this inquisition was confirmed by an order of Court, and *judgment* entered thereon, which has never been stricken out or appealed from, entitle the appellants to interest on the amount thus ascertained, as upon a judgment for like sum regularly rendered. But what we understand is meant by the terms referred to, in the connection in which they are used, is that the assessment or inquisition shall be conclusive between the parties, as to the value of the property or the damages to be sustained by taking it, and as to the regularity of the proceedings by which that ascertainment was reached. As to the order of confirmation and entry of judgment, we are satisfied they add no strength to the appellants' claim. By examining this 9th section of Article 43 of the City Code, under which alone the City Court was authorized to act in taking the inquisition, we find no provision whatever, for any order of confirmation, or for any judgment to be entered. These entries were, therefore, wholly unauthorized by law, and are inoperative and ineffectual. The Act of 1870, ch. 371, has no application to such proceedings. That Act was thoroughly examined and construed by the learned Judge of the City Court in *Merrick's Case,* and shown to be inapplicable to a case like this, and his construction of it was adopted by this Court. We are therefore clearly of opinion, the appellants are not entitled to a *mandamus,* to recover this interest, either as forming part of the just compensation secured by the Constitution, or as in the nature of interest on a judgment.

But while we are of opinion the appellants cannot recover this amount as interest, it by no means follows they are without remedy in the premises, or that they cannot recover an equivalent sum in an action for damages. It has not been decided that the property owner is without remedy in such a case, and must pocket his loss. On the contrary, this Court while sustaining the right of the City to abandon the improvement, and repeal the Ordinance authorizing it, has very explicitly decided, that where the owner has suffered loss by the acts or *delay* of the corporation, the City may be made liable, and he may have his redress in another form of proceeding for any loss or damage he may have sustained by the conduct of the city authorities in the premises. *Graff vs. Mayor & C. C. of Balt.*, 10 *Md.*, 544. Looking to the Ordinances, which prescribe the mode of making these improvements, as to the right of the City to abandon the work, we find there must be some unavoidable delays for which the City cannot be made liable, and if loss results to the property owners therefrom, they are without remedy. Thus the election to abandon cannot be fairly made until all assessments of damages are finally settled, thereby placing before the City Council a definite ascertainment of the whole cost of the work ; nor can the work of opening a street from one point to another be properly commenced until the City has thus acquired the right to take all the property through which it may pass. In doing this some of the owners may be satisfied with the valuation made by the commissioners, while others may exercise the right of appeal and have the amount ascertained by a jury. For delay thus authorized by law and necessarily preventing an immediate certain ascertainment of the entire cost, it would be unjust to hold the City responsible. It must also be observed in this connection that before an Ordinance authorizing an improvement of this character can be passed, application for it must be made

and notice of such application given. 2 *Code,* (*Public Local Laws,*) *Art.* 4, *secs.* 837, 838. These applications are usually made and the action of the City authorities in most cases invoked by parties interested in property to be taken or enhanced in value by the proposed improvement. In view of these considerations we are of opinion the City is not responsible for any loss occasioned by delays of this character. But when the assessments have all been finally settled, the City can then fairly exercise its election to abandon the enterprise or pay the assessments and proceed with the work. For losses to owners occasioned by delay, subsequently occurring, through failure of the City authorities thus to abandon or pay, it is, we think, just and right the City should be held liable, and this is what we understand to be the effect of the decision in *Graff's Case.* It is obviously unjust for the City to hold a condemnation over property for years, neither paying the assessment nor abandoning the improvement. The effect of so doing is in most cases to inflict loss and injury upon the owner, and it would be a reproach to the law if he was denied a remedy therefor. It was therefore a just and proper decision that gave him his action in such a case. As to what the measure of damages should be, no general rule applicable to all cases can be laid down. But where the property, as in this case, consists of a vacant and unimproved lot from which the owner derived neither rents nor profits, it is not difficult to fix a just standard. The inquisition in contemplation of law establishes what was the *actual market value* of the property to be taken *at the time of the condemnation.* *Tide Water Canal Co. vs. Archer,* 9 *G. & J.,* 479; *Moale vs. Mayor, & C. C. of Balto.,* 5 *Md.,* 314. This alone is what the jury are authorized to assess as damages in such cases, and the jury in this particular case were instructed to that effect. After this inquisition, thus fixing the *then actual market value* of the property, the condemnation hung over it, and the assessment was

not paid for more than ten months thereafter. The practical effect of this condemnation was to deprive the owners of all beneficial use of the property. They could not thereafter improve it except at the risk of having their improvements taken by the City without compensation, at any time it might choose to proceed with the work of opening the street. They could not avail themselves of its enhanced value in the market by a sale of it, because no one would buy it at an advance so long as the City held the right to take it at the valuation fixed by the inquisition. Under such circumstances, the true measure of damages for the injury and loss occasioned by the delay in payment, is interest upon the market value of the property as ascertained by the inquisition, for the time the delay was without justifiable excuse. If it be then assumed, (facts however, which the record does not clearly disclose,) that on the 22nd of January, 1874, all assessments of damages for this improvement had been finally settled, and no appeal to this Court from any of them had then been taken, or if taken had then been abandoned, and all assessments for benefits had in like manner been settled and adjusted, we have no doubt that in an action to be brought by the appellants against the City for loss and injury to them, the standard of damages should be interest on the sum ascertained by the inquisition until the same was paid. But they are not entitled to a *mandamus* to enforce its payment until in such an action the jury have ascertained the amount by their verdict, and a judgment thereon has been rendered against the City. For these reasons the order dismissing the petition for a *mandamus* must be affirmed.

*Order affirmed.*

(Decided 14th June, 1876.)