SAMUEL BLACK AND MARGARET C. BLACK vs. THE
MAYOR AND CITY COUNCIL OF BALTIMORE.

*Ordinance of 10th June, 1871, for Condemning and Opening*
*Presstman Street, repealed May 20th, 1875—Action for Dam-*
*ages by Property Owners—What Constitutes such unreason-*
*able or unjustifiable Delay on the part of the City in*
*Executing an Ordinance for Condemning and Opening a*
*Street as would entitle a Property Owner to Damages—*
*The Measure of Damages.*

An ordinance was passed by the Mayor and City Council of Baltimore,
on the 10th June, 1871, for condemning and opening Presstman
street, from Gilmor to Monroe street; on 12th June, notice was
given as required by law, that the Commissioners for opening streets
would meet on 12th July, and proceed to execute the Ordinance.
On 17th and 18th July, owners of land between Gilmor and Monroe
streets which would be cut by Presstman street, and who claimed
compensation for the whole of two lots, a part of which was re-
quired for the bed of the street to be opened, surrendered said lots
to the city, and the Street Commissioners sold the parts thereof not
included in the bed of the proposed street in parcels, on 8th
August, according to law. Nothing further was done until 20th
May, 1875, when the ordinance was repealed. In May, 1877, the
property owners sued the city to recover damages for alleged injury
to their property. HELD:

1st. That, as there appears to have been no remonstrance or complaint
by the appellants, or any application by them to the City Council
to go on with the work, or to repeal the ordinance, but they re-
mained silent, apparently acquiescing in the delay, it was not un-
reasonable for the City Council to conclude that no person was
suffering loss or damage by the delay, and there having been no
act on the part of the appellants to put the city in default, culpable
delay or negligence could not be imputed to the city and no action
lay.

2nd. That the appellants would be entitled to recover only by show-
ing some action on their part whereby the city was put in default,
and then only for such special damage as they actually suffered
from the default and negligence on the part of the city.

Black *vs.* Mayor & C. C. of Balt.

The corporation may abandon any proposed improvement, and repeal the ordinance authorizing it to be made, and, in such case, the land-owner cannot recover the amount of the assessment. Where the land-owner has suffered loss by the wrongful acts or unreasonable delay of the corporation, he may recover damages therefor in an action brought for that purpose, whether such wrongful acts or unjustifiable delay occurred before or after the assessments had been completed.

Where the assessments have been completed, any unreasonable delay on the part of the city would be unjustifiable, because nothing further is required to be done, to enable the city authorities to determine whether the proposed work shall be prosecuted; and nothing remains to be done, but to pay the damages assessed, or to abandon the work.

APPEAL from the Superior Court of Baltimore City.

This was an action instituted the 29th May, 1877, by the plaintiffs below against the Mayor and City Council of Baltimore, to recover damages for injury to their property alleged to have been sustained under circumstances sufficiently stated in the opinion of the Court.

*Exception.*—At the trial the plaintiffs offered the following prayers:

1. If the jury believe from the evidence, that the plaintiffs were the owners of the property described in the two deeds from Bankard & Horn to the said Margaret C. Black, offered in evidence; that by ordinance of the Mayor & City Council of Baltimore, approved June 10th, 1871, Presstman street was directed to be opened from Gilmor to Monroe street; that the said street so directed to be opened passed through said property of plaintiffs, as shown on the plat offered in evidence; that in pursuance of said ordinance the City Commissioners for opening Streets caused to be published the notices dated June 12th, 1871, offered in evidence; that on July 17th, 1871, the plaintiffs executed and delivered to the defendant the two surrenders of that date offered in evidence, and that the same were duly accepted by said defendant; and that subsequently thereto the said

defendant, advertised for sale the said property of the plaintiffs in parcels, as stated in the advertisement offered in evidence, and actually sold the same at public auction on the 8th day of August, 1871; that said ordinance was repealed by Ordinance No. 95, approved on May 20th, 1875, and that from the day last named to the day of the bringing of this suit, the defendant neglected to take any further step towards the execution of the ordinance first aforesaid, then the plaintiffs are entitled to recover such damages as the jury may find from the evidence that the plaintiffs have sustained by reason of such negligence.

2. If the jury find from the evidence, the fact stated in the first prayer, and also find that the said delay in executing the said ordinance was not unavoidable, then the plaintiffs are entitled to recover such damages as the jury may find from the evidence that the plaintiffs have sustained by reason of such delay.

3. That in ascertaining the damages, the jury are at liberty to take into consideration the loss of rent and interest suffered by the plaintiffs, and the depreciation in the value of their property by the said delay of the defendant.

And the defendant offered a prayer, which is stated in the opinion of the Court. The Court, (DOBBIN, J.,) rejected all the prayers of the plaintiffs, and granted that of defendant; to which rejection of plaintiffs' prayers, and granting of defendant's prayer, the plaintiffs excepted. The verdict and judgment being for the defendant, the plaintiffs appealed.

The cause was argued before BARTOL, C. J.; MILLER, ALVEY and ROBINSON, J.

*Orville Horwitz,* for the appellants.

The first and second prayers of the appellants merely affirm propositions already settled by this Court in *Graff vs. Mayor & City Council,* 10 *Md.,* 544; *Graves vs. McClellan,*

19 *Md.*, 351; *Norris vs. Mayor & City Council*, 44 *Md.*, 606; *Mayor & City Council vs. Musgrave*, 48 *Md.*, 272.

The measure of damages, stated in the appellants' third prayer, is the true measure of damages.

1st. The loss of rent of the dwelling house whilst untenanted, or diminution of rent of the house whilst tenanted.

2d. The loss of interest on the money invested in that part of the property which consisted of vacant ground.

3d. The depreciation in the value of the property, by its being tied up by the action of the city, and kept out of the market.

It will also be insisted on, that the defendant's prayer should not have been granted.

Indeed, it is difficult to understand the meaning of the prayer. This action was not brought to recover the amount of damages assessed by the city and not paid. In such a case, it might well be answered, that no assessment had yet been made.

But, in an action brought to recover damages for the negligence of the city in not proceeding to assess damages, and to do whatever else was necessary to be done, in order to carry out the provisions of the ordinance, to answer that you have no cause of action, because the city neglected to perform its duty, is, to say the least, a novel sort of defence even for a municipal corporation.

*James L. McLane*, for the appellee.

The law is well settled in Maryland, "that a municipal corporation has the right to abandon any contemplated improvement and repeal at its pleasure any Ordinance providing for the same." *Balto. & Susq. R. R. Co. vs. Nesbitt*, 10 *How.*, 395; *Graff vs. M. & C. C. of Balto.*, 10 *Md.*, 544; *State, ex rel. of McClellan vs. Graves*, 19 *Md.*, 357; *Merrick, Adm'r of Warfield vs. M. & C. C. of Balto.*, 43 *Md.*, 219; *Norris, et al. vs. M. & C. C. of Balto.*, 44

*Md.*, 598; *Mayor & C. C. of Balto. vs. Musgrave*, 48 *Md.*, 272.

It is equally well settled that the "election to abandon cannot be fairly made until all assessments of damages are finally settled, thereby placing before the City Council a definite ascertainment of the whole cost of the work;" and that "the work of opening a street from one point to another, cannot be properly commenced until the city has thus acquired the right to take all the property through which it may pass." *Norris, et al. vs. M. & C. C. of Balto.*, 44 *Md.*, 606; *Mayor & C. C. of Balto. vs. Musgrave*, 48 *Md.*, 272.

All delays occurring prior to the definite ascertainment of the whole cost of the work, have been termed by this Court, "unavoidable delays for which the city cannot be made liable."

It is only for losses to owners occasioned by "unauthorized delay" on the part of the Mayor and City Council, in making its election, either "to abandon or pay," that any liability exists.

The appellants were never disturbed in their possession of their property. They were free to make what improvements they saw fit, with a certainty that the same must be paid for before the city could take the property, and it was not possible that they should sustain any loss or damage, by reason of the city's *failure to condemn*. From July, 1871, to May, 1875, the city simply failed to fix a price at which it would become the purchaser of the lots in question. *Tide Water Canal Co. vs. Archer*, 9 *G. & J.*, 479.

By the repealing Ordinance of May, 1875, the city simply withdrew from the market altogether. In both instances it exercised its undoubted rights, and cannot be made to answer therefor in damages.

BARTOL, C. J., delivered the opinion of the Court.

It appears from the record in this case that on the 10th day of June 1871, the Mayor and City Council of Balti-

more passed an Ordinance to condemn and open Presstman Street, from Gilmor to Monroe Street, and that on the 12th day of June in the same year, the Commissioners for opening Streets gave notice, as required by *section 6 of Article* 43 *of the City Code,* (of 1869,) of their intention to meet on the 12th day of July next ensuing, and proceed to execute the Ordinance of the 10th of June.   On the 17th and 18th of July, the appellants, who owned land lying between Gilmor and Monroe Streets, which would be cut by Presstman Street, and who claimed compensation for the whole of two lots of ground, a part of which was required for the bed of the street to be opened, surrendered said lots to the City, and the Street Commissioners sold the parts thereof not included in the bed of the proposed street, in parcels on the 8th day of August, *under section* 7, *Article* 43 *of the City Code.*

Nothing further appears to have been done towards condemning and opening Presstman Street, and no further action was taken in the premises, until the 20th day of May 1875, when the Ordinance of June 10th 1871 was repealed by the Mayor and City Council, and the proposed improvement was abandoned.

In May 1877 the appellants brought this suit to recover from the appellee, damages alleged to have been sustained by them, in consequence of the action of the City in the premises.

The declaration alleges in the *second count,* that the appellee " delayed unnecessarily, wilfully and negligently to proceed in the work of condemning and opening said street, from the time of said sale, until the 20th day of June 1875, when the said ordinance was repealed.   By means whereof the plaintiffs were greatly obstructed and prejudiced in the use and enjoyment of their property."

After the evidence had been offered, the appellants offered *three prayers,* which were rejected, and the appellee *one* which was granted, and the judgment being for the defendant, the plaintiffs have taken this appeal.

The prayer which was granted, instructed the jury that "as no assessment of damages or benefits had been made by the Commissioners for Opening Streets, and it being admitted that the City had never taken actual possession of the plaintiffs' property, they had sustained no such damages at the institution of this suit as would entitle them to a verdict."

It is well settled that a corporation may abandon any proposed improvement, and repeal the ordinance authorizing it to be made, and in such case, the land-owner cannot recover the amount of the assessment. This has been decided in numerous cases. We refer only to *Norris, et al. vs. Mayor & C. C. of Baltimore,* 44 *Md.,* 604, and the cases there cited.

While this is settled law, it seems to be equally well settled that where the land-owner has suffered loss by the wrongful acts, or unreasonable delay of the corporation, he may recover damages therefor in an action brought for that purpose. *Graff's Case,* 10 *Md.,* 554; *McClellan vs. Graves,* 19 *Md.,* 375; *Norris's Case,* 44 *Md.,* 606, and *Musgrave's Case,* 48 *Md.,* 272.

The case of *Norris vs. M. & C. C. of B.,* is relied upon as establishing the principle, that no recovery can be had by the land-owner for damages he may have sustained, *before the assessment of damages and benefits has been made.* But that case announces no such principle, and no such question was there involved. The claim was for interest on damages which had been assessed, and the payment of which had been, as alleged, unreasonably delayed by the City.

The Court speaks of some delays which are unavoidable, and for which no recovery can be had by the land-owner, such as are caused by assessing the damages and benefits, without which the cost of the work cannot be ascertained; and acquiring the title to all the property required for the street, which is necessary before the opening of the

street can be properly begun, and the delay which is sometimes caused by appeals from the valuation of the Commissioners, is also referred to as unavoidable; but the language of the opinion is very carefully guarded, and does not support the proposition that a corporation, after commencing proceedings of condemnation, and notifying owners that their property will be taken, can unnecessarily delay further action for an unreasonable length of time, thereby depriving the owner of the profitable use of his property, and diminishing its rental value, and yet leave him without remedy. The delays spoken of in that case, and for which the land-owner has no remedy are those only which are "*necessary,*" and "*unavoidable,*" and "*authorized by law.*" In *Norris's Case,* as we have before stated, there was neither allegation nor proof that there had been any unnecessary delay on the part of the city, *until after the assessments had been completed,* and the language of the Court must be construed with reference to the particular facts of the case then under consideration.

We think the same principle applies, whether the wrongful acts, or unjustifiable delay on the part of the city occur *before* or *after* the assessments have been completed. 2 *Dillon on Corporations, sec. 474, and notes.*

We can perceive no good reason why a party who has suffered actual damage by the culpable or unreasonable delay of the city authorities in prosecuting or abandoning a work of this kind, is not entitled to be indemnified for his loss, whether the delay complained of, occur before or after the assessment of damages and benefits has been completed. We are therefore of opinion, there was error in the general legal proposition asserted in the appellee's prayer.

But we think the prayers of the plaintiffs below were properly refused. They were erroneous in failing to submit to the jury the question of negligence on the part of the defendant, and the question whether, under all the

circumstances of the case, the delay on the part of the city, in repealing the ordinance was unreasonable. In passing upon the question of what is unjustifiable or unreasonable delay on the part of the corporation, it is obvious that a different rule, and different considerations apply to a case in which the assessments have all been completed, and to one like the present, where the ordinance has remained almost entirely unexecuted. In the former case, any unreasonable delay on the part of the city would be unjustifiable, because nothing further is required to be done, to enable the city authorities to determine whether the proposed work shall be prosecuted; and nothing remains to be done, but to pay the damages assessed, or to abandon the work. Whereas in this case no such progress had been made in the execution of the ordinance, as would enable the city authorities to determine whether the public interest required them to prosecute and complete the work, or ultimately to abandon it. Nor is it possible to determine by proof how long a time might have been required to complete the assessments, if the work of condemning and opening the street had been prosecuted; and it would be alike difficult, if not impossible, to ascertain by any definite proof, at what period, culpable or inexcusable delay on the part of the city commenced.

In dealing with a corporation like the appellee, engaged in a work of public improvement, having large and important interests to consult, we cannot fail to see that delays must unavoidably occur. And we have no hesitation in laying down the rule, that where an ordinance of this kind has been passed and remains unexecuted, or but partially carried into effect, and there is no remonstrance or complaint by parties interested; or any application by them to the City Council to go on with the work, or to repeal the ordinance; but such parties remain silent, apparently acquiescing in the delay, it is not

unreasonable for the City Council to conclude that no person is suffering loss or damage by the delay, and in such case, there being no act on the part of the property holder to put the city in default, culpable delay or negligence cannot be imputed to the city, and no action lies.

In this case the record does not disclose, that any action of that kind was taken by the appellants. Without this, in our opinion, the present suit cannot be maintained; and therefore a new trial will not be ordered, except upon the application of the appellants.

In case a new trial shall be had, it is proper to say with respect to the measure of damages, that the bill of exceptions does not show in what manner the plaintiffs suffered special damage. After proving the cost of the property in 1871, and its depreciation in value during the period which had elapsed, before the ordinance was repealed, the bill of exceptions states, in general terms, "that they proved the damage to the plaintiffs by the action of the city." The proof shows that there was a large dwelling house on the property, but there is no evidence showing whether the same was leased to others, or occupied by the plaintiffs; if occupied by themselves, no recovery could be had on account of any depreciation in its rental value; nor, in the absence of proof that an attempted sale or lease of the property was actually prevented or defeated by the default of the city, could any recovery be had on that account.

In our judgment the appellants are entitled to recover, only by showing, as before stated, some action on their part whereby the city was put in default; and then only for such special damage as they actually suffered from the default and negligence on the part of the defendant.

*Judgment reversed, with leave to*
*appellants to apply for a remand*
*of the case for a new trial.*