JOSEPH DODSON ET AL. *v.* ANNE ARUNDEL
COUNTY, MARYLAND

[No. 16, September Term, 1982.]

*Decided October 14, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*George W. Liebmann* for appellants.

*Robert C. Wilcox, Assistant County Solicitor,* with whom was *Steven P. Resnick, County Solicitor,* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court.

In this case, we are presented with three issues: (1) whether there is authority for applying the legal rate of interest to judgments in conventional condemnation proceedings; (2) whether, in conventional condemnation proceedings, the application of the legal rate of interest rather than the prevailing market rate of interest denies the condemnee "just compensation" as constitutionally required; and (3) whether the 110-day "delay" by the County in paying the judgment was reasonable.

The appellants, Joseph Dodson et al., owned approximately 243 acres of undeveloped land, located in the 8th Election District of southern Anne Arundel County, in an area known as Jug Bay. They had successfully obtained a special zoning exception and the necessary permits to allow for development of the property as a campground for recreational vehicles. On September 15, 1977, Anne Arundel County (County) filed condemnation proceedings in the circuit court in order to acquire this property. On September 26, 1977, Joseph Dodson, unaware of the pending condemnation proceedings, went to the County Office of Inspections and Permits to obtain the grading permits which had been approved. At that time, one of the employees attempted to give Dodson written notice of the condemnation proceeding. However, Dodson refused to accept the letter, and it was subsequently mailed to him.

On December 14, 1978, the parties stipulated that the value of the property would be fixed as of December 19, 1978, and the landowners' out-of-pocket expenses for development ($30,000) would be included in the jury award. The matter proceeded to trial, and, on March 12, 1980, the jury returned its inquisition in the amount of $500,000. Judgment *nisi* was entered by the circuit court on March 13, 1980. Final judgment was entered on March 18, 1980, and the inquisition

was recorded in the judgment index the same day. Although it was forwarded to the Land Records office, the inquisition was not recorded because a certificate of payment had not been filed as required by Maryland Rule U22 a.

Neither party appealed the judgment. Therefore, pursuant to Maryland Code (1974, 1981 Repl. Vol.), Real Property Article, § 12-109 (d) (2), and Maryland Rule U26 c 2, the County had "120 days after the entry of final judgment" to determine whether to take the property or abandon the proceedings. On June 30, 1980, 110 days after entry of the judgment, the County elected to take the property and paid the appellants a total of $508,958.93, the amount of the award plus interest at the legal rate of six percent [1] from the date of entry of judgment to the date of payment. The certificate of payment was filed by the County and the jury inquisition was recorded in the Land Records office that same date, effectively vesting title in the County.

Subsequently, the property owners filed a two-count declaration asserting I) that the 110-day delay in payment of the award was unreasonable, and II) that the payment of the prevailing legal rate of interest (six percent) on the award was unconstitutional. On March 10, 1981, the trial court sustained, without leave to amend, the County's demurrer to Count II, on the basis that while there is no constitutional right to receive interest on a condemnation award, there is a statutory right to such interest; and, pursuant to Md. Rule 642, the legal rate of interest applied. The order was stayed pending a trial on the merits of Count I. On June 10, 1981, the landowners' motion for summary judgment as to Count I was denied. At the trial of the merits, the circuit court, sitting without a jury, found that the County's delay in paying the award was reasonable. Judgment was rendered for the County on November 6, 1981, and the property owners appealed both rulings. We granted certiorari in order to finally put to rest the controversy surrounding the

---

1. The legislature changed the legal rate of interest on judgments from 6% to 10% per annum, effective July 1, 1980. Md. Code (1974, 1981 Cum. Supp.), Courts & Judicial Proceedings Article, § 11-107 (a).

payment of the legal rate of· interest on condemnation awards.

(1)

The appellants argue, first, that there is no statutory authority for application of a six percent interest rate in a conventional condemnation case. Even if such interest rate does apply, the appellants further contend that it is unconstitutional because it violates the just compensation clauses of the United States and Maryland Constitutions.

We hold that the trial court properly sustained the County's demurrer to Count II. It is elementary that the sovereign may not take private property for public use without payment of "just compensation" to the property owners. *See* U.S. Const. amend. V and Md. Const., art. III, § 40. The Supreme Court has interpreted "just compensation" to be the "full and perfect equivalent in money of the property taken" from the landowner. *United States v. Miller,* 317 U.S. 369, 373, 63 S.Ct. 276, 279, 87 L.Ed. 336, 342 (1943), *reh'g denied,* 318 U.S. 798, 63 S.Ct. 557, 87 L.Ed. 1162 (1943). This compensatory award is no more than indemnity for the loss caused by the taking and is intended to put the landowner in as good a pecuniary position as if no taking had occurred. Toward this end, the Supreme Court did not lay down a general formula applicable to all cases. Instead, since the monetary award is dependent on the facts of each case, the fair market value of the property, at the time of the taking, serves as a practical guide and standard.[2]

This Court has traditionally equated "just compensation" with "fair market value of the land at the time of the taking." *State Roads Comm. v. Warriner,* 211 Md. 480, 485, 128 A.2d 248, 251 (1957). For purposes of condemnation proceedings, the legislature has defined "fair market value" as:

"the price as of the valuation date [3] for the highest and best use of the property which a vendor, willing

---

**2.** This standard translates into "market value fairly determined;" i.e., what a willing buyer would pay a willing seller under fair market conditions, Miller, supra, 317 U.S. at 374, 63 S.Ct. at 280, 87 L.Ed. at 343.

**3.** Md. Code (1974, 1981 Repl. Vol.), Real Property Article, § 12-103,

but not obligated to sell, would accept for the property, and which a purchaser, willing but not obligated to buy would pay, . . ." Code (1974, 1981 Repl. Vol.), Real Property Article, § 12-105 (b).

The jury may properly consider various elements that influence market value at the time of the taking in its determination of damages. For example, we have held that "consideration may be given to any utility to which [the land] is adapted and for which it is immediately available[;]" as well as the condition of the land, improvements on the land, and the effect, if any, on the remainder of the land where only a portion is taken. *Pumphrey v. State Roads Comm.,* 175 Md. 498, 506, 2 A.2d 668, 671-72 (1938). The jury may also take into account the sales of comparable lands, *State Roads Comm. of Maryland v. Wood,* 207 Md. 369, 373, 114 A.2d 636, 638 (1955); evidence of reasonable probability of rezoning, *Warriner, supra,* at 484, 128 A.2d at 251-252; and, "any special features which may enhance [the property's] marketability . . . ." *Brack v. M. & C. C. of Baltimore,* 125 Md. 378, 381, 93 A. 994, 995 (1915). However, the jury should disregard any enhancement in value caused by the proposed project for which the property is taken. *State Roads Comm. v. Parker,* 275 Md. 651, 683, 344 A.2d 109, 127 (1975); Code (1974, 1981 Repl. Vol.), Real Property Article, § 12-105(b). In each case, the value of the land, with reference to its uses and purposes, is the essential fact to consider, and the appropriate approach to the fair market value determination will depend on the facts of the case. *Miller, supra,* 317 U.S. at 373-74, 63 S.Ct. at 280, 87 L.Ed. at 342.

While the jury determines the amount of just compensation in condemnation cases (i.e., fair market value), the legislature has provided that the condemnees are entitled to *additional* elements of damage. In *Lore v. Board of Public Works,* 277 Md. 356, 354 A.2d 812 (1976), this Court held

governs when market value is to be determined. However, that section is not relevant here since the parties stipulated that the value of the property was to be fixed as of December 19, 1978.

that one of those additional elements is interest on the judgment. Judge Digges stated for the Court:

> "Having concluded that in condemnation cases the General Assembly may grant property owners more than the constitutional minimum of 'just compensation,' we must ask whether the Maryland Legislature has done so in regard to takings such as the one now before us and, if so, whether interest on the award is one of the additional elements of damage it has authorized. We think it clear that when in 1963, as a result of an extensive study undertaken at the direction of its Legislative Council, the General Assembly completely revised this State's law pertaining to eminent domain, it specifically provided that, in addition to the payment of 'just compensation,' other elements of damage should be included in the award to be paid the property owner. It seems equally obvious to us that one of the extra elements of damage this revision authorizes to be disbursed to property owners, is the very one at issue here — interest on the award, computed from the date of the entry of the judgment *nisi* to the time the judgment is satisfied." *Id.* at 359, 354 A.2d at 814 (footnote and citation omitted).

This Court has also held that the general rules of procedure apply to condemnation proceedings. *See Hammond v. State Roads Comm.,* 241 Md. 514, 517, 217 A.2d 258, 260 (1966). Therefore, under Md. Rule 642, the property owners are entitled to the *legal* rate of interest on the judgment in a conventional condemnation proceeding.[4] *See Paape v. Grimes,* 256 Md. 490, 494, 260 A.2d 644, 646 (1970) (where no specific rate is given, term "interest" is construed to be at legal rate). The legal rate of interest for the time period in question was six percent. Md. Const., art. III, § 57. See footnote 1, *supra.* Accordingly, we hold that the appellants

---

4. Payment of interest in a "quick-take" condemnation is governed by statute. See Md. Code (1974, 1981 Repl. Vol.), Real Property Article, § 12-106 (c).

were legally entitled to interest on the award at the rate of six percent from the date of entry of judgment to the date of payment.

The second prong of the appellants' argument, that the six percent rate is unconstitutional, is without merit. As discussed above, "just compensation" means "the full and perfect equivalent in money of the property taken [,]" *Miller, supra,* 317 U.S. at 373, 63 S.Ct. at 279, 87 L.Ed. at 342, and does not include interest. Moreover, we would point out that interest in condemnation cases was not allowed at common law and is a matter of legislative grace. *See Lore v. Board of Public Works, supra. Accord Norcross v. Cambridge,* 166 Mass. 508, 511, 44 N.E. 615, 616 (1896); *Dept. of Transp. v. New Century,* 436 N.E.2d 225, 228 (Ill. App. 1982). It is well settled in Maryland that "just compensation" in a condemnation case does not include interest. In *Norris v. Baltimore,* 44 Md. 598 (1876), Judge Miller stated:

> "It is insisted on the part of the appellants, that interest in [a condemnation] case when payment is thus delayed, is a necessary ingredient of the 'just compensation' provided by the Constitution for taking private property for public use.
>
> We cannot, however, so regard it. It has long been the settled law of Maryland, that both private and municipal corporations, when authorized to exercise the power of eminent domain, have the right to renounce the inquisition and select a more eligible route, or to wholly abandon the improvement or enterprise, at any time before actual payment of the *amount assessed,* either by commissioners or jury, and until that time no title to the property condemned vests in the corporations.
>
> But when this sum is paid or tendered, the title vests, and the constitutional requirement is gratified. Nothing more than this sum can, in any case, be demanded by the property owner, as, and for the compensation which the Constitution secures to him. This we consider to be the firmly

established law of this State." *Id.,* at 604 (emphasis in original) (numerous citations omitted).

While the legislature has provided for the additional element of interest on the judgment, *Lore, supra,* the interest paid for the period between the judgment *nisi* and the taking is not intended to be part of the "just compensation" to which the condemnees are constitutionally entitled for the taking of the land. Rather, the purpose of the interest is to compensate for the "loss of the use of the monies represented by the judgment . . ., and the loss of income thereon, between the time of the entry of the judgment *nisi* . . . and the satisfaction of the judgment by the payment." *I. W. Berman Properties v. Porter Brothers, Inc.,* 276 Md. 1, 24, 344 A.2d 65, 79 (1975).

(2)

The appellants next argue that, under the due process clauses of the United States and Maryland Constitutions, they are entitled to the amount of interest earned by the County on the amount of the verdict during the intervening period. At the trial on the merits, the parties stipulated that the average yield on the County's short-term investments was as follows:

| March | 14.48 percent |
| April | 15.28 percent |
| May | 9.18 percent |
| June | 8.59 percent |

The appellants contend that a taking occurred as early as the date of institution of the condemnation proceedings because they took no further action toward developing the land once warned that such development could have an adverse effect on the condemnation award. They assert that they were denied the use of their land, and, therefore, should recover the actual amount of interest earned by the County. The appellants also claim that they are entitled to compensation for the appreciation of the value of their property.

We reject the appellants' arguments on both points. As the County points out, the parties stipulated, prior to the trial in

the condemnation proceedings, that the value of the property would be fixed as of December 19, 1978. This stipulation was entered at the risk of both parties since, in these uncertain economic times, the property value could have depreciated by the time the inquisition award was entered. Having entered such stipulation freely and voluntarily, the appellants cannot now claim entitlement to an alleged appreciation of the property value from the agreed date to the date of payment. Moreover, the appellants were not entitled to any compensation until a taking occurred.

In a conventional condemnation case, the time of taking is statutorily defined. *See* Code (1974, 1981 Repl. Vol.), Real Property Article, § 12-102. Section 12-102 (1) prescribes the time of taking in "quick-take" procedures; section 12-102 (2) states that a taking occurs "[i]n *every other case,* if the plaintiff pays the judgment and the costs pursuant to Subtitle U of the Maryland Rules" (emphasis supplied).[5] *Accord Schreiber v. Baltimore City,* 248 Md. 425, 427, 236 A.2d 732, 733 (1968). We hold that, by definition, a taking did not occur until June 30, 1980.

While there may be circumstances that warrant a finding that a compensable taking has occurred prior to payment of judgment, we hold that there was no such taking in this case. As we stated in *Stevens v. City of Salisbury,* 240 Md. 556, 214 A.2d 775 (1965);

> "It is an accurate statement to say that every restriction upon the use and enjoyment of property is a 'taking' to the extent of such restriction; but every 'taking' is not a 'taking' in a constitutional sense for which compensation need be paid. '. . . [I]t is now established that reasonable regulation, which is not confiscatory, but which leaves the owner in substantial enjoyment of his property, although diminishing its value through the restriction of its use, is valid without compensation.' . . . [I]n order to be compensable, the damage resulting

---

**5.** We note that there is no universal law as to when a taking occurs. For a summary of the law in this area, see 3 Nichols, The Law of Eminent Domain, § 8.63 (rev. 3rd ed. 1978).

from the restriction must be 'substantial,' and constitute 'severe interferences which are tantamount to deprivations of use or enjoyment of property.'" *Id.* at 567, 214 A.2d at 781 (numerous citations omitted).

It is, thus, clear that some actions are valid without payment of compensation for the fair value of the property rights. If the use benefits the owner in a particular application, or an existing use is permitted to continue, there is no taking in the constitutional sense and no compensation payment is required.[6] In the instant case, it is undisputed that the appellants remained in possession of the land and that they were not prevented from using the property during the intervening period. While the appellants argue that the undeveloped land had no rental value, Dodson testified that, in fact, no effort had been made to rent the land. Also, the appellants received their grading permits and were not precluded by the County from developing the land. The letter Dodson received from J. Michael Evans, Director, Department of Inspections and Permits, stated in pertinent part:

> "Any construction operations conducted on the property will be undertaken at your own risk. A jury may well determine that your conduct has diminished the value of the land. On the other hand, if your conduct enhances the value, a jury could determine that your purpose was to impress the jury rather than to operate a business on the property."

In addition, the appellants had use of the property for duck blinds and (as pointed out during oral arguments) muskrat

---

6. See generally Michelman, *Property, Utility, and Fairness: Comments on the Ethical Foundations of "Just Compensation" Law,* 80 Harv. L. Rev. 1165 (1967) (Factors to be considered in deciding whether compensation is required include (1) the amount of economic injury to the property; (2) the harmfulness of the land use so restricted; (3) the loss to the property owner as balanced against the gain to the public; (4) any physical use or occupation of the property by the government.) Md.-Nat'l Cap. P. & P. Comm. v. Chadwick, 286 Md. 1, 11, 405 A.2d 241, 246 (1979).

traps. Accordingly, we hold that there was no constitutional taking requiring payment of compensation until June 30, 1980, when payment was made, the certificate of payment filed, and the jury inquisition recorded. Therefore, the appellants were not entitled to payment until June 30, 1980, and cannot constitutionally claim the amount of interest earned by the County from March through June of 1980.

Upon reviewing the federal cases relied upon by the appellants, we conclude that such cases are factually distinguishable from the instant matter and that the appellants' reliance is misplaced. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980), involved a situation where an interpleader fund had been deposited with the clerk of the court and placed in an interest-bearing account. A receiver was subsequently appointed by the court and moved to have the fund delivered to him. The clerk withheld $9,228.74, the amount to which the court was statutorily entitled as its fee for " 'services rendered' for 'receiving money into the registry of the court,' " [7] as well as the interest earned on the fund (nearly $100,000). *Id.*, at 157, 101 S.Ct. at 448, 66 L.Ed.2d at 362. The receiver filed suit to recover the amount of interest and the circuit court ruled in his favor. The Florida Supreme Court reversed on the basis that once deposited with the court, the fund became *public* money. No constitutional taking had occurred because the interest earned on the clerk's registry account was not *private* property. The United States Supreme Court reversed, holding that the principal sum deposited was private property. That ruling was in accordance with the general rule that "interest on an interpleaded and deposited fund follows the principal and is to be allocated to those who are ultimately declared owners of that principal." *Id.*, at 162, 101 S.Ct. at 451, 66 L.Ed.2d at 365. It is clear that since the clerk of the court was merely holding the interpleader fund until it could be determined which creditors were entitled to what amount, the clerk had no legal right to retain the interest earned by

---

**7.** Pursuant to Fla. Stat. § 28.24 (14) (1977), the clerk was authorized to charge one percent of the first $500 deposited and one-half percent of each subsequent $100.

such fund. In the case *sub judice,* the appellants' argument would be more persuasive had the County deposited the amount of the inquisition award in the court's registry, elected to take the property, and then claimed the amount of interest earned, if any. However, that did not happen. The appellants were not entitled to any compensation until a taking occurred, and, by definition, there was no taking until the judgment was paid, a certificate of payment filed, and the inquisition recorded.

In *George's Radio & TV v. Ins. Co. of North America,* 536 F. Supp. 681 (D. Md. 1982), the court found that the plaintiff was entitled to insurance coverage and awarded prejudgment interest at the market rate applying the average rate of return on Moody Aaa long-term corporate bonds. *Id.,* at 685. However, Judge Jones made the following observations regarding prejudgment interest:

> "Awarding prejudgment interest is a matter within the Court's discretion to afford full and fair compensation to the injured party. The rate of interest and the date from which it runs are within the Court's discretion. . . .
>
> Prejudgment interest is awarded to put the injured party in the position he would have occupied had the *defaulting* party fulfilled his *obligation.* . . . Regardless of the company's good faith in denying coverage, plaintiff is entitled to recover interest from the date coverage was denied." *Id.,* at 683-84 (emphasis added) (citations omitted).

In the case at bar, the County did not default on any obligation, nor were the appellants denied any claim. The County had 120 days to elect to take the property or abandon the condemnation proceedings. There was no obligation to pay compensation until a taking occurred. As the appellants conceded at oral argument, the County could have abandoned the proceedings at any time and would not have owed the appellants anything.

Similarly, in *United States v. 97.19 Acres of Land,* 511 F. Supp. 565 (D. Md. 1981), the interest was paid on the *defi-*

*ciency* amount. The case involved a condemnation suit, filed as a straight taking, where the jury originally awarded $15,000 as the amount of just compensation. That amount was paid into the court and final judgment was entered July 13, 1976. The property owner appealed and the United States Court of Appeals for the Fourth Circuit reversed and remanded. *United States v. 97.19 Acres of Land,* 582 F.2d 878 (4th Cir. 1978). On remand, the case was referred to the Land Commission and the magistrate found that the taking occurred July 2, 1976, when title vested in the United States. The land valuation was determined as of the same date and just compensation was awarded in the amount of $80,386. The court agreed with the recommendation of the magistrate that the plaintiff was entitled to interest on the deficiency amount because the landowner had been completely divested of title July 2, 1976, but not paid the entire compensation. The court also concluded that the appropriate rate of interest was the average rate of return on Moody Aaa long-term corporate bonds rather than six percent. The distinctions between this case and the case now before us are obvious. We simply are not faced with a situation where the landowner is seeking interest on a deficiency award. As we have discussed at length, the appellants were not entitled to just compensation until a taking occurred (i.e., June 30, 1980). The amount of just compensation to which the appellants were entitled, as determined by the jury, was $500,000. The six percent interest on that amount, from the date of entry of judgment to the date of payment, is an additional element of damage, over and above the constitutional minimum of just compensation, that has been provided for by the General Assembly. *See Lore, supra.*

(3)

The appellants' third, and last, argument is that they are entitled to damages for the *unreasonable* delay by the County in electing to take or abandon the property once the judgment *nisi* was entered. The County contends that they did not elect to take the property earlier than June 30, 1980,

because they were experiencing severe cash flow shortages and seriously considering abandoning the proceedings. Legally, the County had "120 days after the entry of final judgment" to abandon the proceedings. Code (1974, 1981 Repl. Vol.), Real Property Article, § 12-109 (d) (2).

While the legislature enacted the eminent domain code in 1912,[8] there were no specific requirements regarding date of payment of compensation or time limitations imposed on the State relating to abandonment. The law in this area remained substantially the same until 1963 when it was completely revised by the General Assembly.[9] The revised code established provisions relating to the date of valuation of the property sought to be condemned and the measure of damages, and defined the term "fair market value". In addition, the new statute provided for the regulation of abandonment of condemnation proceedings and included precise procedural guidelines for limiting the condemnor's unrestrained right to abandon. Specifically, the condemning authority could no longer abandon the condemnation process after a taking had occurred or 120 days after entry of final judgment unless an appeal had been taken. These limitations are currently codified as Code (1974, 1981 Repl. Vol.), Real Property Article, § 12-109 (d).

The purpose of the 120-day limitation on exercising the right to abandon is twofold. First, it preserves the condemnor's common law right to reconsider the jury's inquisition and elect to abandon the condemnation proceeding prior to payment of the award. Secondly, the 120-day limitation may relieve property owners of the suspense and hardship which attaches to delay in the election to abandon. Cf. State v. Ambrose, 191 Md. 353, 365, 62 A.2d 359, 364 (1948). Prolonged uncertainty, surrounding an unlimited abandonment period, was previously regarded

---

8. Md. Laws 1912, ch. 117, added Art. 33A, entitled "Eminent Domain".
9. Md. Laws 1963, ch. 52, repealed Code (1957, 1962 Supp.), Art. 33A and enacted a new Art. 33A, entitled "Eminent Domain". For a complete analysis of the new Art. 33A, see Baker & Altfeld, *Maryland's New Condemnation Code,* 23 Md. L. Rev. 309 (1963), and Ghingher & Ghingher, *A Contemporary Appraisal of Condemnation in Maryland,* 30 Md. L. Rev. 301 (1970).

as damage without injury in the legal sense; this left the landowner without redress or remedy for the condemnor's delay. *Lord Calvert Theatre v. Baltimore,* 208 Md. 606, 611, 119 A.2d 415, 417 (1956), citing *Shanfelter v. Baltimore,* 80 Md. 483, 494, 31 A. 439, 442 (1895). The 120-day ceiling is a legislative attempt to correct this situation by eliminating extended, unnecessary uncertainty. Although some delays are inherent in the condemnation process, the condemnor, pursuant to section 12-109 (d), must abandon, if at all within 120 days after entry of final judgment.

At common law, the landowner was entitled to sue for damages, in an action separate from the condemnation proceedings, for certain delays by the condemnor in paying the award or abandoning the proceedings. The delay of payment or abandonment had to be "without justifiable excuse," *Norris, supra,* at 608, or "culpable or unreasonable," *Black v. Baltimore,* 50 Md. 235, 242 (1879), and, without the landowner's acquiescence, *Id.,* at 243-44. Upon a showing of "bad faith, negligence, or default in some legal duty," the landowner could recover damages if harm actually resulted from such unreasonable delay, *Petroli v. Baltimore,* 166 Md. 431, 434, 171 A. 45, 47 (1934). Generally, whether the delay was unreasonable was a question of fact to be determined by the jury. *Black, supra,* at 338. In this separate action, the landowner could only collect damages for the condemnor's delay and could not recover the original condemnation award. *Petroli, supra,* at 435, 171 A. at 47. Notwithstanding a landowner's right to a separate action for unreasonable delay, the court tolerated some delay in its recognition of a condemnor's long-standing right to abandon condemnation proceedings. For example, in *Ambrose, supra,*[10] Judge Markell stated:

> "Almost a hundred years ago it was decided both by the Supreme Court and by this court, that although a jury's inquisition, when confirmed, determines

---

**10.** In *Ambrose,* the State moved to dismiss the condemnation proceedings and strike out the judgment for Ambrose. The trial court overruled the motion and the State appealed.

the value to be paid if the property is taken, the inquisition does not constitute a taking, and the condemning public or private corporation, if dissatisfied with the valuation or for any other reason, may abandon the condemnation and is not obligated to take the property or pay the amount of the inquisition." 191 Md. at 361, 62 A.2d at 362 (citations omitted).

Our prior decisions regarding unreasonable delay pre-date the legislative determination of this State's policy that 120 days is the maximum amount of time to be spent by the condemnor in electing to abandon the condemnation. The independent recovery of damages for delay was used by this Court to impose some kind of sanction against unfounded, arbitrary and capricious action by the condemnor. Because the new condemnation law of 1963 imposed explicit time limitations during which abandonment must occur, we hold that ordinarily no common law right of action for unreasonable delay will be countenanced after the inception of that law. An exception to this rule would occur in a factual situation where the decision to delay payment amounted to a taking or otherwise violated the property owner's constitutional rights. *See, e.g., Walker v. Acting Director,* 284 Md. 357, 396 A.2d 262 (1979), a conventional condemnation case where, pending its appeal, the State entered upon the condemned land without paying the condemnation award. However, we hold that the circumstances of this case do not justify an award of damages for unconstitutional delay. As discussed above, there was no taking until June 30, 1980, and no violation of any constitutional right of the condemnee.

> *Judgment affirmed.*
> *Costs to be paid by the appellants.*