75 N.J. Super. 161 (1962)
182 A.2d 566
STATE OF NEW JERSEY, ACTING BY AND THROUGH SALVATORE A. BONTEMPO, COMMISSIONER OF THE DEPARTMENT OF CONSERVATION AND ECONOMIC DEVELOPMENT, PLAINTIFF-APPELLANT,
v.
JOHN M. PELLINI, RITA G. PELLINI AND CHRISTINE M. EWEN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1962.
Decided June 21, 1962.
*162 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Justin P. Walder, Legal Assistant, argued the cause for appellant (Mr. Arthur J. Sills, Attorney General, attorney; Mr. Walder, on the brief).
Mr. Norman Heine argued the cause for respondents Pellini.
*163 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This is an appeal from a Law Division judgment holding that the Clerk of the Superior Court was not entitled to receive commissions upon the condemnation award which plaintiff had paid into court.
On January 8, 1960 the State of New Jersey, acting by and through the Commissioner of the Department of Conservation and Economic Development, instituted condemnation proceedings to acquire 850 acres of land owned by defendants Pellini. Condemnation commissioners were appointed and they eventually made an award of $83,550. The State appealed (N.J.S.A. 20:1-16), but before trial by jury (N.J.S.A. 20:1-20) the Pellinis agreed to a settlement of $74,200 as just compensation for the taking. After hearing an expert witness testify that the amount agreed upon was fair and proper under the circumstances, the Law Division judge on January 26, 1961 entered judgment against the State for $74,200.
Thereafter the deputy attorney general in charge of the case applied for an order to pay the award into court. The notice of application and supporting affidavit revealed that the reason for this step was that the interested parties could not agree how the award was to be distributed, the property was encumbered by liens whose amount had not been determined and, finally, the monies could not safely be paid to any person. Plaintiff tendered a $74,200 check in open court payable to the Superior Court Clerk, requesting that it be received for deposit in full satisfaction of the condemnation judgment. An order reciting these facts was entered by the Law Division judge on February 17, 1961, directing that the check be deposited with the Clerk to await the further order of the court. The order vested an absolute fee simple title in the State to the lands in question.
On February 28, 1961 an order, consented to by the attorney for the Pellinis, the attorney representing the first mortgagee, a judgment creditor and a second mortgagee, and the attorney for the township, which had a claim for *164 taxes, was entered directing the Superior Court Clerk to disburse the full sum of $74,200 on deposit with him to the several parties in interest in the amounts set out in the order. The Clerk refused to honor that order since it made no provision for payment of his commissions of $747.50, to which he considered himself entitled under N.J.S. 22A:2-20.
The question as to who would be responsible for the Clerk's commissions was informally presented to the Law Division judge on March 17, 1961. After hearing argument he requested that briefs be submitted, and directed that further argument be heard on March 30. On that day the judge concluded that the February 28, 1961 judgment required no amendment or supplement, and had to be obeyed. He pointed out that N.J.S. 22A:2-20, dealing with commissions payable to the Superior Court Clerk, did not apply since such commissions could be charged only in the Chancery Division, and the condemnation case was entitled in the Law Division. He also stated that since the condemnation had been instituted by a department of the State of New Jersey, and that department had applied for permission to pay the monies into court, the service rendered by the Clerk had been rendered to the State and therefore, under N.J.S. 22A:2-22 (referred to below), the Clerk could make no charge for his services. The court thereupon, on the same day, entered an order adjudging that the Clerk was not entitled to receive any commissions and directing that the fund in court be distributed in accordance with the order for distribution theretofore made.
The Pellinis had meanwhile assigned all their interest in the condemnation award to a certain Pennsylvania corporation. The attorney for the two mortgagees and judgment creditor gave notice on April 3, 1961 of a motion to be relieved from, and to have vacated, the order of distribution entered February 28, 1961 because it was incomplete and could not be filed in its present form, and for an order including all necessary provisions with respect to distribution. *165 The attorney for the Pellinis also gave notice of a motion to amend the February 28 order so as to provide for the distribution of the funds on deposit without deduction for any commissions to the Clerk, any monies due the Pellinis to be paid to the assignee Pennsylvania corporation. Both motions were returnable April 10. The deputy attorney general (a person other than the deputy who had prosecuted the condemnation) appeared on that date, stating that he was representing the Clerk, the State acting as condemnor no longer being in the case. The parties in interest heretofore mentioned also appeared by their respective counsel. Following argument the court entered an amended order for distribution, directing that the $74,200 be disbursed by the Clerk (without deduction for any commissions or fees) to the township, the first mortgagee, the judgment creditor, the second mortgagee, and the assignee corporation, in that order, in the amounts set out.
On the same day, April 10, the court ordered that the enforcement of that portion of the judgment it had just entered, declaring that the Superior Court Clerk was not entitled to receive commissions, be stayed pending a determination of plaintiff's appeal to this court. The stay order further directed that the Clerk pay out the sums cited in the amended order of distribution except for $747.50, the Clerk's commissions, which was to be deducted from the sum due to the assignee corporation and retained pending determination of the appeal about to be taken. This appeal was filed the next day. We granted the Clerk leave to intervene.
The State paid the condemnation award into court in accordance with N.J.S.A. 20:1-15 which reads, in part:
"* * * if several parties being interested in the fund shall not agree and the court shall not have made a determination as to the distribution thereof, or if the lands or other property taken are encumbered by a mortgage, judgment or other lien, or if for any other reason the plaintiff cannot safely pay the amount awarded to any person, in any such case, with leave of court, the amount awarded *166 may be paid into court, and shall be distributed according to law, on the application of any person interested therein."
Plaintiff had to pay the award into court because, as we have seen, the position of the landowners, the Pellinis, was such that the State could not pay the condemnation money to them with safety. The need for having the Clerk take over the custody and protection of the award was occasioned by the condition of their title and by the respective claims of lien holders.
Respondents argue that the Clerk is without authority to deduct commissions from the monies deposited with him under N.J.S. 22A:2-20, the statute on which he relies, because the order to pay into court was made by the Law Division, and not the Chancery Division. That section, part of the 1953 general revision of the Fees and Costs Act, provides in pertinent part:
"The Clerk of the Superior Court is authorized and directed to charge the following additional fees in the Chancery Division:

* * *
Commissions on paying out trust fund accounts (including all funds, monies or other assets brought into and deposited in court)  two percentum (2%) on first one hundred dollars ($100.00); one and one-half percentum (1 1/2%) on the next nine hundred dollars ($900.00); one percentum (1%) on the excess over one thousand dollars ($1,000.00)." (Italics ours)
This is a re-enactment of N.J.S.A. 22:1A-15 (L. 1948, c. 366, § 15, as amended by L. 1949, c. 193, § 10), repealed by L. 1953, c. 22, § 3. The 1948 act, in turn, had adopted the language of R.S. 22:2-17.5, as amended by L. 1941, c. 188, § 2. The 1948 statute did not in express words limit the commissions to the Chancery Division. However, the 1949 amendment included the introductory paragraph quoted above, carried into the 1953 revision.
Until the amendment of R.S. 20:1-15 by L. 1953, c. 20, § 24, the condemnor, on petition to the Chancellor, could pay the award "into the court of chancery by order of the chancellor." Cf. R.S. 20:1-27, repealed by L. 1953, c. 20, *167 § 36  incorporated in N.J.S.A. 20:1-25 by the words, "paid into court as provided by section 20:1-15 of this Title." Today N.J.S.A. 20:1-15 directs, as noted earlier, that the award "be paid into the court." The court referred to is the Superior Court. See N.J.S.A. 20:1-2 and 20:1-16.
R.R. 4:92-10 provides that where, pursuant to the provisions of a statute, a plaintiff in condemnation is authorized to pay the award or monies into court, an order of payment into the Superior Court shall be required, and this order may be advised by the standing master at Trenton in accordance with the practice and procedure of the Superior Court. And under R.R. 4:92-11 an application for payment from such award may be made by any party in interest pursuant to R.R. 4:85.
With this background, we deal now with respondents' contention that commissions could not be charged because it was the Law Division which directed the payment into court of the condemnation award.
Jurisdiction in condemnation actions is given to the Superior Court, N.J.S.A. 20:1-2 and 20:1-16, just mentioned. No division of the court is specified. Accordingly, both the Law Division and the Chancery Division may exercise the conferred jurisdiction. Morris May Realty Corp. v. Board of Freeholders of Monmouth, 18 N.J. 269, 275 (1955). Ordinarily, however  as in the present case  the action is processed in the Law Division. It was that Division which appointed the condemnation commissioners, took over the appeal from their award, and entered judgment against the State in the sum of $74,200 after the landowners had agreed they would accept that amount from the State, and after taking the testimony of an expert. Under the practice that existed prior to the new judicial system erected under our Constitution of 1947, it would have been necessary for the State to apply to the Chancellor under R.S. 20:1-15, in order to pay the award into court. The approval of the Chancellor would also be required to withdraw the money *168 so deposited. See Morris v. Comptroller, 54 N.J.L. 268, 274 (Sup. Ct. 1892).
Under the Constitution of 1947 and the implementing rules of court, the powers formerly exercised by our law courts and the Court of Chancery have been fused into one court. Art. VI, Sec. III, par. 4, gives the Law Division of the Superior Court, subject to the rules promulgated by the Supreme Court, the power to exercise auxiliary equity jurisdiction as an aid to its jurisdiction over proceedings brought in that Division. The salutary purpose of our new judicial system, with its fundamental object of procedural reform, would be defeated if what the Law Division judge did in directing plaintiff to pay the condemnation award into court were to be considered merely in its law aspect. In the proper exercise of his auxiliary equity powers, the Law Division judge was merely exercising the powers formerly exercised by the Chancellor in dealing with the receipt and distribution of condemnation monies.
The exercise of this auxiliary equity jurisdiction brought into play the provisions of N.J.S. 22A:2-20 authorizing a commission to be paid the Superior Court Clerk on monies paid into court. The purely condemnation aspects of the proceedings were completed by the Law Division judge prior to the deposit of the fund into court, when he entered judgment fixing the amount of money due the landowners. However, when the several claims of the interested parties were not resolved, the State invoked the equity functions of the court, to be exercised by the Law Division, with regard to the payment of the award to the Clerk. The monies so deposited constituted a trust fund, not only under the express language of N.J.S. 22A:2-20, but in general judicial contemplation. In re N.J. State Bar Ass'n, 112 N.J. Eq. 236 (E. & A. 1933). It follows, therefore, that the Superior Court Clerk is entitled to be paid the commissions specified in N.J.S. 22A:2-20.
In the course of the argument in the Law Division there was a suggestion that the State should pay the *169 Clerk's commissions. Costs in condemnation proceedings are not recoverable in the absence of a statute (Metler v. Easton and Amboy R.R. Co., 37 N.J.L. 222, 226 (Sup. Ct. 1874); In re Canda Realty Co., 17 N.J. Misc. 346, 348, 9 A.2d 305 (Sup. Ct. 1939); 6 Nichols, Eminent Domain (3d ed. 1953), § 30.2, p. 452) or, under the present practice, a rule of court. We find no statute, rule or decision holding the State liable for the payment of commissions to the Superior Court Clerk (or his predecessor) for the monies paid into the court by the State.
R.S. 20:1-14 formerly provided that a Supreme Court justice or Circuit Court judge should, on application of either party on reasonable notice, tax and allow "such costs, fees and expenses of the commissioners, clerks and other persons" performing any of the duties necessary in a condemnation proceeding, and these were to be paid by the petitioner in condemnation. This statute was repealed by L. 1953, c. 20, § 23. Costs are presently determined by rule of court. See State v. Otis Elevator Co., 12 N.J. 1, 8 (1953). Since the present action never progressed to the point of a jury trial on appeal from the award of the condemnation commissioners, the only fees and costs that could have been allowed were those provided by R.R. 4:92-5. That rule states that upon the motion of any party the court, on a proper showing, may in its discretion allow such fees, expenses and costs of the commissioners as the court deems adequate, and such allowances shall be paid by the plaintiff. The rule makes no mention of the fees and expenses of clerks and other persons provided for in the repealed statute, R.S. 20:1-14.
N.J.S. 22A:2-22, part of the revision of the Fees and Costs Act effected by L. 1953, c. 22, approved the same day as chapter 20 just mentioned, completely disposes of the matter. That section, which follows the language of L. 1949, c. 193, § 17 of an act amending and supplementing the Fees and Costs Act, provides:
*170 "No charge shall be made by the Clerk of the Supreme Court or the Clerk of the Superior Court for the filing of any paper or the rendering of any service for which a fee is provided by this act or the act to which this is a supplement when the party filing the paper or requesting the service is a State officer paid from State funds, or a State department, board, body or commission."
When the State, pursuant to N.J.S.A. 20:1-15, sought and obtained an order to pay the condemnation award to the Clerk, the proceeds to be held by him awaiting the further order of the court, the proceedings terminated insofar as it was concerned. Indeed, the order directed that fee simple absolute vest in the State. The payment into court amounted to a constructive payment to the landowners, and had the same legal effect under the condemnation statute as actual payment to them. N.J. Highway Authority v. Ellis, 24 N.J. 1, 8 (1957). As was said in that case, once the deposit was made, the court took control of the money for all purposes, and under the terms of the statute could pay it out to those who were entitled to it. It follows that the Superior Court Clerk rendered no service to the State with regard to the condemnation monies left in his custody. He was holding the funds for those who might rightfully claim and receive them pursuant to court order.
It should be observed that the responsibility of the Superior Court Clerk is the same whether the monies entrusted to his hands are deposited in a proceeding entitled in the Chancery Division or in the Law Division. That responsibility encompasses the safeguarding and proper investment of the money, the calculation of interest, and the payment of the money on proper court order. We see no reason why the Clerk should not be paid his statutory commissions when the funds deposited with him are the result of the Law Division's exercise of its auxiliary equitable powers. No useful purpose would be served by requiring, as a condition precedent to the Clerk's deducting his commissions, that the proceedings be formally transferred from the Law Division to the Chancery Division. Such a procedure would, as *171 we have said, run counter to the ends sought to be achieved in the new judicial system. See O'Neill v. Vreeland, 6 N.J. 158, 164-6 (1951).
Respondents also argue that the allowance of commissions to the Clerk would operate to deprive the landowners of the just compensation called for by Art. I, par. 20 of the Constitution of 1947. Such is not the case. The "just compensation" was determined at the moment the Law Division entered its judgment of January 26, 1961 fixing the fair value to be paid by the State to the owners at $74,200. The dispute that then arose between those claiming an interest in the land and to the fund was not of the State's making. It had no other recourse but to come to the court and ask for leave to deposit with the Clerk, to the owners' credit, the $74,200 check tendered. The resolution of who was to get the "just compensation" so paid into the hands of the Clerk, and how much, was left to the owners and the lien claimants.
Defendants place reliance upon the case of Kelly v. Oklahoma Turnpike Authority, 269 P.2d 359 (Okl. Sup. Ct. 1954), to support the constitutional issue they raise. That case is not authority for their claim, for the court there pointed out that the so-called "poundage fee" charged by the court clerk for receiving and paying out money deposited by the condemnor to satisfy the condemnation commissioners' award as a prerequisite to taking possession of the property, was part of the "costs" of the first assessment within the statute requiring the condemnor to pay costs and expenses of the first assessment. The court observed (at page 363) that "any charge sought to be made up to the time of appraisal and payment, either to the landowner or into court, as a prerequisite of the exercise of the right to take, cannot rightfully be considered as anything other than a charge against the landowner for ascertaining the value of property taken from him under exercise of sovereign's superior right," and would thus be violative of the constitutional inhibition against the taking of private property for public use without the payment of just compensation. The italicized words are *172 significant. Nor do we consider American Salvage Co. v. Housing Authority of Newark, 14 N.J. 271 (1954), cited by defendants, as apposite.
We have duly noted that the condemnation proceedings were instituted by the State acting by and through the Commissioner of the Department of Conservation and Economic Development. The Attorney General, who by his deputy represented the State in the main proceedings, ended by representing the Superior Court Clerk before the Law Division and on this appeal. No question has been raised as to the informality of this procedure. In the Law Division, as we observed above, the deputy attorney general on April 10, 1961 expressly noted that he was representing the Clerk, and not the State as condemnor. After notice of appeal was filed we granted the Clerk leave to intervene, thereby giving the appeal a measure of regularity.
The amended order of distribution entered on April 10, 1961 is reversed insofar as it directs the Clerk to disburse the $74,200 without deduction of his statutory commissions. The matter is remanded to the Law Division with directions to enter a new order distributing the fund, but first allowing the Clerk's commissions of $747.50.
No costs.