570 A.2d 373

**John D. SOLKO, et ux.**

v.

**STATE ROADS COMMISSION OF the STATE HIGHWAY ADMINISTRATION.**

No. 979, Sept. Term, 1989.

Court of Special Appeals of Maryland.

March 5, 1990.

---

**138**

Carl Harrison Lehman, Upper Marlboro, for appellants.

Henry F. Leonnig, Asst. Atty., Upper Marlboro (J. Joseph Curran, Jr., Atty. Gen. and Edward S. Harris, Asst. Atty. Gen., on the brief), Baltimore, for appellee.

Argued before ALPERT, ROSALYN B. BELL and WENNER, JJ.

ROSALYN B. BELL, Judge.

In this appeal we address a familiar situation where a property owner contends the State was not willing to pay adequate compensation in a quick-take condemnation proceeding. On April 6, 1987, the State Roads Commission of the State Highway Administration (the State) filed a Land Acquisition Petition for part of the property owned by John D. and Patti Ann Solko (the Solkos). The land was required in order to widen part of Maryland Route 197. The State deposited $22,200 as the estimated fair market value of the land taken.

The matter went to the Board of Property Review for Prince George's County (the Board). The Board held a hearing on August 6, 1987 and awarded the Solkos $65,974. Both parties noted their dissatisfaction with this result. A condemnation proceeding was filed on August 24, 1987 and amended on November 6, 1987. The amended petition increased the area of perpetual easement being acquired from .014 to .161 acres. The Solkos did not oppose the amendment and filed an answer to the amended condemnation petition on January 27, 1989.

The case was heard before a jury in the Circuit Court for Prince George's County in April of 1989. There was an

initial question regarding the proper date for valuation of the land taken. The court found the operative date of valuation for all the land to be the date of the filing of the amended condemnation proceeding, November 6, 1987. The jury returned the inquisition for $30,700, $8,500 more than the State's estimated fair market value for the land. At that time, a counter claim was still pending, but was dismissed one week later, without prejudice. This appeal followed. This Court, *sua sponte*, ordered final judgment in the case under Rule 8–602(e).

On appeal, the Solkos contend:

—The court erroneously ruled that the date of valuation was November 6, 1987.

—The court erred by refusing to instruct the jury that the burden of proof in a quick-take case is on the condemnor.

—The court erred by refusing them surrebuttal.

—The court erred by permitting rebuttal testimony by one of the State's expert witnesses.

—The court erred by refusing their litigation expenses.

We disagree with the Solkos on all of these contentions and affirm the judgment of the trial court.

## FACTS

In 1970, the Maryland–National Capital Park and Planning Commission and the Prince George's County Council enacted the Bowie–Collington Area Master Plan. The plan designated Route 197 as an arterial road which had been improved from Route 450 north to approximately a quarter-mile south of the Solkos' property; the improvements began again at Bowie State College, north of the Solkos' property. The condemnation proceedings were instituted against the Solkos because their property constituted part of the gap between these two areas already improved.

The Solkos purchased their property for $38,000 in 1984. The 5.186–acre parcel fronted on the west side of Route 197 and was zoned Rural Residential. At the April, 1989 trial,

the Solkos and the State agreed that the best use of the Solkos' property prior to the taking was development for detached single family dwellings. The parties disagreed, however, on the number of homes that could be built on the land. The State argued that, at most, two houses could be built, since the property fronted on a planned arterial highway, while the Solkos contended that five single family residential houses could be built on their parcel.

At trial, the State presented witnesses who testified to the characteristics of the area taken and its value. The Solkos' witnesses consisted of Casimir Bazis, who was their engineer, and Mr. Solko. In response to the Solkos' case, the State put on rebuttal witnesses, one of whom was Bruce Yoder. Mr. Yoder is an expert in the area of land planning; he testified to the cost of developing the Solkos' property. Melville Peters was another rebuttal witness for the State. Mr. Peters is an expert in the field of real estate appraisal and testified to the cost of developing the Solkos' property. His main point was that it was not economically feasible to subdivide the property. The trial court told the Solkos' attorney that he would be allowed to counter by recalling Mr. Solko as a surrebuttal witness, depending on the evidence presented. The trial judge later denied this request based on counsel's proffer of the specifics of Mr. Solko's testimony.

## DATE OF VALUATION

The Solkos challenge the trial court's ruling that the date of valuation regarding the land acquired was November 6, 1987. They contend that the correct valuation date is the date of the trial, April, 1989, which would substantially increase the value of the land. The State, on the other hand, argues that the trial court was correct.

Both parties point to Md.Transp. Code Ann. § 8–330 (1977), as the governing provision. This section provides:

"If, within 1 year after payment is made under § 8–323 of this subtitle, the Commission fails to ascertain the

entire amount to be paid for the property and acquire title to it by deed or condemnation *or*, within that same 1–year period, fails to file timely a petition for condemnation as required by the Maryland Rules, then the fair value of the property shall be the greater of the values determined as of:

"(1) The date the title to the property is acquired; and

"(2) The date the payment was made under § 8–323 of this subtitle." (Emphasis added.)

The Solkos contend that the State failed to comply with the part of the statute requiring it to "ascertain the entire amount to be paid" within one year of the filing date of the petition. Consequently, the Solkos assert that the trial date becomes the date of valuation. The State, however, argues that § 8–330 must be read within the context of the alternatives it sets forth. We agree with the State's reading of the alternatives.

The trial date becomes the valuation date only if the State fails to comply with both alternatives. The first alternative is payment and acquisition of title. The second alternative, the State continues, is "or within the same 1–year period, fails to file timely a petition for condemnation." The State argues that it did not fail to file a timely petition. The State has clearly fulfilled this second requirement since it filed both the original and the amended condemnation within one year of the original filing date of April 6, 1987. Thus, the State maintains that the date of the amended petition, November 6, 1987, is the proper valuation date for the property and not the date of trial.

The State reinforces its argument by referring to the Revisor's Note after § 8–330. The Revisor's Note states that § 8–330 was revised to conform with the Court of Appeals' interpretation of this section in two cases, one of which was *State Roads Commission v. Orleans*, 239 Md.

368, 211 A.2d 715 (1965).[1] In *Orleans,* 239 Md. at 375, 211 A.2d 715, the Court said:

> "A second reasonable reading of Sec. 18 [of former Art. 89B] is that it gives the Commission one year to acquire title to and pay for the land taken by agreement with the owner or acquiescence in the Board's award and thirty days after the award of the Board, if the Commission is dissatisfied, or thirty days after the filing of notice of dissatisfaction by the owner, within which to file suit. On this reading of the section, the words 'as aforesaid' following the reference to the filing of suit would refer to the procedural provisions as to manner and time of filing suit of Rule U27."

Thus, the State argues that as long as it timely filed the condemnation petition and the amendment and the filing occurs within one year of the payment, then the date of value would normally be the date the original petition was filed, April 6, 1987 in this case. The trial court, however, moved the date of evaluation to November 6, 1987 when the State posted the additional money for the additional portion of the Solkos' land being "taken." The State does not contest the change of the date from April to November, 1987 and believes the November, 1987 date is correct. We agree with the State that this date, not the trial date, is the proper one for valuation. To hold otherwise would encourage one party or the other to delay the time of trial in "takings" suits to secure the advantage of an increase or decrease in the value of the property *pendente lite.*[2]

---

**1.** The other case mentioned in the Revisor's Note in *State Roads Commission v. Pumphrey,* 260 Md. 633, 273 A.2d 81 (1970).

**2.** Our holding is consistent with 2 *Nichols on Eminent Domain* § 6.01[2] (3d ed.1989), who writes,

> "Where an entry is made upon property by the condemnor and an act committed which indicates an intent to appropriate the property, the taking is complete." (Footnote omitted.)

Here, the act of depositing money into an escrow account demonstrated the State's intent to "take" the Solkos' property.

## JURY INSTRUCTION

In their brief, the Solkos baldly claim that the trial court erred by refusing to instruct the jury that the burden of proof in a "quick-take" condemnation case is on the condemnor. They offer no direct support for this statement and arguably have waived it. Nonetheless, because this is an important issue which we have not previously addressed, we explain why we disagree with the Solkos.

■ First, the Solkos contend that the burden of proof of the value of the property taken is on the State since they have the right to open and close the case. In *Harford Building Corp. v. City of Baltimore*, 58 Md.App. 85, 90, 472 A.2d 479, *cert. denied*, 300 Md. 153, 476 A.2d 722 (1984), Judge Getty, formerly of this Court, quoted 1 *Thompson on Trials*, § 247:

> " 'In a proceeding to condemn land for public uses and for the assessment of the compensation to be made to the landowner, the petitioner holds the affirmative of the issue, and consequently has the right to begin and reply, both in the introduction of evidence and in the argument to the jury.' "

*Harford* clearly established the State's position as opener and closer of condemnation proceedings as Rule U4 mandates. Rule U4 requires the designation of the party seeking condemnation as plaintiff and the persons having an interest in the property designated as defendants; hence, the condemnor has the right to open the case.[3] In *Harford*, 58 Md.App. at 89, 472 A.2d 479, quoting *Kenly v. Washington County Railroad Co.*, 129 Md. 1, 6, 98 A. 232 (1916), we restated the rule in Maryland:

> " 'The landowner is passive until the company causes the warrant to issue; and the proceeding is always instituted to enable the company *to take* the land as well as to

---

**3.** *Harford* also noted that there had been a bill, which was not adopted, before the General Assembly at the 1970 Session (S.B. 470), which would have given the condemnee the right to open and close. *Harford*, 58 Md.App. at 89, 472 A.2d 479.

ascertain the amount of the damages to be paid to the owner. As the object is *to take* the land, the landowner can not be said to have the burden of proof on him.' " (Emphasis in original.)

The State has and agrees that it has the burden of proving the necessity of taking and the public use to be made of the property. Initially, the State argues in its brief that, once it has shown the necessity for the taking for public use, the burden of showing damages is upon the property owner.[4] The State cites *Church v. State Roads Commission*, 249 Md. 406, 413, 240 A.2d 255 (1968), for this proposition. The State's reliance on *Church* is not fully justified and is perhaps disingenuous since the State later concedes that neither party has the burden of proof regarding damages.

The authorities across the country differ on the question of where lies the burden of proving the value of land in a case of eminent domain. 7 *Nichols on Eminent Domain* § 8.04[2] (3d ed.1989). *See also* 29A C.J.S. *Eminent Domain* § 271 (1965). A majority of jurisdictions hold that, if the sole issue at trial is the amount of money to be paid, the condemnee has the burden of proof and the right to open and close.[5] Other jurisdictions, however, accord the con-

---

**4.** Whether the right to open and close passes to the condemnee if the necessity of taking for a public use is conceded is not before us and must await another day.

**5.** *See, e.g., City of Sierra Vista v. Cochise Enterprises, Inc.*, 144 Ariz. 375, 697 P.2d 1125, 1131 (Ariz.App.1984) (landowner has burden of proof on issue of damages); *La Plata Elec. Ass'n, Inc. v. Cummins*, 703 P.2d 592, 595 (Colo.App.1985), *aff'd*, 728 P.2d 696 (1986) (property owner has burden of proof with regard to establishing the existence of damages and the amount of compensation to which he is entitled); *State Dep't of Transp. & Dev. v. Clark's Estate*, 432 So.2d 405, 408 (La.App.1983) (owner has burden of proving his or her claim); *State By and Through Dep't of Highways v. Donnes*, 219 Mont. 182, 711 P.2d 805, 808 (1985) (landowner has burden of proof to show entitlement to just compensation in excess of that offered by the condemnor); *Chase Manhattan Bank, N.A. v. State*, 103 A.D.2d 211, 479 N.Y.S.2d 983, 990 (App.Div.1984) (the burden of proof is on the claimant to show value); *Pappas v. State ex rel. Dep't of Transp.*, 763 P.2d 348, 350 (Nev.1988) (jury instruction stating that the landowners had the burden of proving, by a preponderance of the evidence, the market value

demnor the right to open and close regardless of the issues presented, and burden of proof is not relevant.[6]  Still other jurisdictions place the burden of proving adequate compensation on the condemnor.[7]  In these jurisdictions, the landowner may offer countervailing evidence both as to the value of the land and the damages caused by the taking, but is not required to do so until the condemnor has met his or her burden of proving the value.  *See* 5 *Nichols* § 18.5.

■ We hold with a minority of jurisdictions that the usual burden of proof instruction as to value has no place in a condemnation case.  Not only do we find the minority position better reasoned, but our case law in this area

---

of the property the State acquired); *Dutchuk v. Board of County Comm'rs, Billings County,* 429 N.W.2d 21, 23 (N.D.App.1988) (party claiming damages has burden of proof to establish damages incurred); *Energy Transp. Systems, Inc. v. Mackey,* 650 P.2d 1152, 1157 (Wyo. 1982) (the landowners in eminent domain cases have the burden of proving the just compensation to which they are entitled).

**6.** *See, e.g., White v. George Power Co.,* 237 Ga. 341, 227 S.E.2d 385, 391 (1976) (per curiam) (state law is settled that the condemnor has the burden of proof in condemnation cases and that the right to open and close accompanies that burden).  *But see West v. Department of Transp.,* 176 Ga.App. 806, 338 S.E.2d 45, 47 (1985); *State v. Heirs of Kapahi,* 48 Hawaii 101, 147, 395 P.2d 932, 935–36 (1964) (in accordance with applicable statutes, the condemnor presents its evidence of valuation first); *Martin v. Columbus,* 101 Ohio St. 1, 127 N.E. 411, 413 (1920) (no burden of proof instruction should be given regarding the value of the land taken); *State v. Amunsis,* 61 Wash.2d 160, 377 P.2d 462, 465 (1963) (en banc) (no burden of proof instruction should be given regarding the value of the land taken).

**7.** *See, e.g., Division of Admin., State of Fla., Dep't of Transp. v. Grossman,* 536 So.2d 1181, 1183 (Fla.App.1989) (condemning authority has burden of proof to show compensation paid was adequate); *West v. Department of Transp.,* 176 Ga.App. 806, 338 S.E.2d 45, 47 (1985) (condemnor has burden of proof to prove adequate and just compensation; once condemnor makes a prima facie case, the condemnee must produce overcoming evidence when asserting greater value or damage); *Department of Transp. in Behalf of People v. Schlechte,* 94 Ill.App.3d 187, 50 Ill.Dec. 6, 7, 418 N.E.2d 1000, 1001 (1981) (condemnor carries the burden of proving the fair market value of the interest being taken); *North Carolina Bd. of Transp. v. Rand,* 299 N.C. 476, 263 S.E.2d 565, 568 (1980) (burden of proving the existence and the amount of benefit is on condemnor).

supports this result as well. Once the necessity for the taking has been established, the focus of the fact finder is upon "just compensation" which the State is required to pay for that taking. It matters not who bears the burden of proof as the concept has no place in the inquiry.

As stated by the Supreme Court of Alaska in *State v. 45,621 Square Feet of Land*, 475 P.2d 553, 555 (Alaska 1970), cited with approval in *Patterson Redevelopment Agency v. Brenstock*, 123 N.J.Super. 457, 303 A.2d 598, 599 (1973):

> "In a condemnation proceeding * * * where the sole issue is determination of just compensation, procedural rules involving the concept of risk of failure to persuade are inapposite. Here the focal point of the trier of fact's inquiry is the ascertainment of just compensation. Thus, regardless of whether the condemning agency or the property owner meets a given burden of persuasion, Alaska's constitutional mandate requires that the owner be awarded just compensation for the property he has lost. In the usual condemnation case, the jury is confronted with conflicting opinions as to value. The jury is not faced with the necessity of finding a particular value or no value at all. As to the issue of fair market value, both the condemning agency and the property owners may produce competent evidence of the fair market value of the condemned property. Absent the production of such evidence by either party, the triers of fact will determine fair market value solely from the other party's evidence. The burden of production facet of burden of proof, rather than the risk of non-persuasion aspect, is the more meaningful concept in the trial of a condemnation proceeding." [8]

Condemnation cases are fundamentally different from other kinds of cases where value is concerned. There is no

---

8. Maryland has a similar constitutional requirement that landowners be paid "just compensation" when their property is seized. *See* Art. III, § 40 Maryland Constitution.

"fact" which one party is attempting to show; rather, there are experts who provide testimony tending to give credence to the value each party has assigned to the property. That is not to say that no burden falls upon the condemnee. As a practical matter, however, he or she bears the burden of producing the information which demonstrates that the land taken is worth more than the condemnor has estimated, just as the Alaskan Court noted. But this is the burden of production, as the *45,621 Square Feet of Land* Court noted.

The burden of production is well illustrated in our holding that, where landowners sought to establish themselves as displaced persons and thus eligible for payments, they had the burden of establishing that fact, *Conrad v. Department of Natural Resources*, 30 Md.App. 479, 493, 352 A.2d 904, *cert. denied*, 278 Md. 719 (1976), or where severance damages are separately and additionally sought, landowners are similarly given that burden, *Brannon v. State Roads Commission*, 305 Md. 793, 800, 506 A.2d 634 (1986). Similarly, in *Church*, the Court of Appeals held that, where the landowner contended the Board of Zoning Appeals should extend the nonconforming use or that the original zoning was erroneous, the landowner had the burden of establishing the contention. So far as value is concerned, the jury is free to arrive at its own evaluation, so long as there is evidence to support such an award. The State had conceded this and we agree. The jury uses its independent judgment regarding the weight of any facts before it; it is not bound to accept the judgment of any single witness. *Greater Baltimore Consol. Wholesale Food Market Auth. v. Duvall*, 255 Md. 90, 97, 256 A.2d 882 (1967). The Court of Appeals has held: "The jury may properly consider various elements that influence market value at the time of the taking in its determination of damages." *Dodson v. Anne Arundel County*, 294 Md. 490, 495, 451 A.2d 317 (1982). The question of fair market value is ultimately an issue for the trier of fact. *Colonial Pipeline Co. v. Gimbel*, 54 Md.App. 32, 38, 456 A.2d 946, *cert. denied*, 296 Md. 110 (1983). If the landowners disagree with the State's

estimate of the property's value, they need to produce evidence that the land is, in fact, worth more. The trial court's refusal to instruct the jury that the State has the burden of proof was not error; such an instruction would have constituted error had it been given.[9]

## SURREBUTTAL

The Solkos also state that the trial judge erred by refusing them surrebuttal. Again, arguably, this argument is waived since the Solkos presented no support for it. On the other hand, since we understand the Solkos' position based on the argument as a whole, we will consider the issue.

█ Rebuttal evidence is any competent evidence which explains, directly replies to, or contradicts material evidence. *Riffey v. Tonder*, 36 Md.App. 633, 645, 375 A.2d 1138, *cert. denied*, 281 Md. 743, 745 (1977). Whether such evidence is proper rebuttal is in the discretion of the trial judge. This Court has stated that the appellate court "will not reverse for error in this determination unless the ruling of the trial court was 'manifestly wrong' and 'substantially injurious.'" *Riffey*, 36 Md.App. at 646, 375 A.2d 1138. Surrebuttal is essentially a rebuttal to a rebuttal.

█ In the instant case, the Solkos challenge the trial judge's failure to allow them to rebut the testimony of Mr. Yoder, an expert in land planning who testified in rebuttal. When the issue was first broached, the following exchange ensued:

---

9. We agree with the State that the Solkos' main purpose regarding this argument is an attempt to secure the right to open and close. As we said in *Harford*, 58 Md.App. at 90, 472 A.2d 479, "Until the law is amended by statute or rule change [referring to Rule U4], the right to proceed and to close in condemnation cases rests with the condemnor." Moreover, the Solkos' claim that this instruction, that the State has the burden of proving damages in a quick-take case, is given in several Maryland counties does not bolster this argument. The error of several trial judges does not make this instruction correct.

"[The Solkos' Attorney]: My question is if you're going to call Mr. Yoder, then would I be permitted to call Mr. Solko in surrebuttal?

"THE COURT: Certainly.

"[The Solkos' Attorney]: Okay.

"THE COURT: *It would depend upon the evidence,* but certainly surrebuttal is allowed.

"[The Solkos' Attorney]: All right.

"Now, may I have a commitment from [Attorney for the State] that he will call Mr. Yoder in rebuttal or I be permitted to put this report into evidence?

"THE COURT: Are you planning to call Mr. Yoder?

"[Attorney for the State]: I plan to, but I'm not going to commit myself to—I definitely plan to call him, but I just don't see how he can—

"THE COURT: All right.

"[The Solkos' Attorney]: All right. But in the event he doesn't call him, I would be able to call Mr. Solko back in order to get on with the rest of it, I take it?

"THE COURT: *I don't know what it is you're going to do* and I don't know what the Greenhorne and O'Mara report looks like or what use he made of it. *So, I can't really say."* (Emphasis added.)

The State did call Mr. Yoder to the stand. He testified to the costs of subdividing the lot in accordance with the County subdivision ordinance. He noted that Mr. Solko or the developer of that property would have to put in an on-site storm management system and set aside park land or pay fees which totaled $126,500. Defense counsel initially proferred that Mr. Solko would, as a surrebuttal witness, testify that he had a neighbor who had received a double driveway and that he, Mr. Solko, had analyzed Mr. Yoder's report and wanted to criticize *The Suburban Maryland Homebuilders Guide.* Later, defense counsel stated that a Mr. Jones would testify to the double driveway which Mr. Jones supposedly gave to Mr. Solko as part of the negotiation of the neighboring property, which contradicted Mr.

Yoder's testimony. The trial court denied Mr. Jones as a surrebuttal witness, apparently because this testimony should have come out on cross-examination, and because Mr. Yoder, whose testimony was sought to be contradicted, was no longer available to appear in court. Defense counsel still maintained Mr. Solko should have been allowed to testify on his analysis of the report about which he asked Mr. Yoder. Mr. Yoder did not rely on the guide mentioned in his rebuttal testimony. The attorney for the State had asked Mr. Yoder if this guide, *The Suburban Maryland Homebuilders Guide*, was based on the subdivision of one hundred lots. Mr. Yoder responded that it was and answered, "yes" to the next question inquiring whether "this" provides for economy of scale. The court's final words on the topic of surrebuttal were: "We're going to go ahead and instruct the jury. I don't think anything that has been presented to this Court this morning is appropriate surrebuttal." We agree. The Solkos have failed to demonstrate grounds for error which even come close to the "manifestly wrong" and "substantially injurious" standard.

## REBUTTAL TESTIMONY

The Solkos further contend that the court erred by permitting Mr. Peters to testify as a rebuttal witness. We disagree.

In the presentation of their case, Mr. Solko went through a development cost approach. Mr. Peters testified on rebuttal for the State concerning the "true" cost of development. The Solkos' attorney objected to a question asking Mr. Peters what "the subdivision approach" was:

"THE COURT: Your client has testified that the highest and best use he was going to make of this property is a subdivision.

"[The Solkos' Attorney]: Yes.

"THE COURT: That's what Mr. Peters is here for on rebuttal.

"Go ahead. Overruled."

Under the standards discussed above, Mr. Peters' testimony was proper rebuttal.

## LITIGATION EXPENSES

■ The Solkos urge this Court to find that the trial court erred by refusing their request for litigation expenses. They claim that the phrase which suggests that the landowner be put "in as good a pecuniary position as if no taking had occurred" requires an award of attorney's fees and litigation expenses. We disagree.

According to 4A *Nichols On Eminent Domain* § 14.24[4], at 14–600 (1989 Supp.), "the acquisition of property by eminent domain does not involve a taking of the legal services which are needed in order to establish a claim for compensation." [10]  But *Nichols* observes:

> "[D]espite the equitable and moral aspects in favor of allowing counsel fees, other jurisdictions [besides Florida] do not recognize such allowance on the basis of constitutional considerations, but rather insist that such allowances are a matter for legislative determination and require the enactment of authorizing statutes."

4A *Nichols* § 14.24[4], at 14–600 (1989 Supp.).  Not surprisingly, given the ever-increasing costs of litigation, there has been a trend toward legislative recognition of attorney's fees as a compensable cost of litigation applicable to eminent domain cases.  The General Assembly of Maryland, however, has not joined this trend.

The Solkos contend that *King v. State Roads Commission*, 298 Md. 80, 89, 467 A.2d 1032 (1983), which declared prejudgment interest to be part of "just compensation," supports their contention that a landowner should be put in as good a position as if no taking had occurred and, hence,

---

**10.** "Florida is the only state in which it is held that a landowner is entitled to recover the fees of expert witnesses and counsel fees in a condemnation action by virtue of the *constitutional* requirement of just compensation."  4A *Nichols* § 14.24[4], at 14–600 (1989 Supp.) (emphasis in original).

attorney's fees should be an element of damages. They are mistaken.

Although *King* did hold that interest in a quick-take condemnation case is an element of just compensation, and not a matter of legislative grace, this result was based on Maryland case law as well as federal cases interpreting the Fifth Amendment and the government's power of eminent domain. *See United States v. Thayer–West Point Hotel Co.*, 329 U.S. 585, 589, 67 S.Ct. 398, 400, 91 L.Ed. 521 (1947); *Seaboard Air Line Ry. v. United States*, 261 U.S. 299, 306, 43 S.Ct. 354, 356, 67 L.Ed. 664 (1923); *Mayor of Baltimore v. Kelso Corp.*, 294 Md. 267, 271, 449 A.2d 406 (1982); *Hammond v. State Roads Comm'n*, 241 Md. 514, 519, 217 A.2d 258 (1966). The issue of whether attorney's fees are included under the term "just compensation," however, has not been addressed by Maryland case law [11] and the federal cases which have looked at this issue have held that compensation is for the property taken, not the litigation expenses incurred by the owner. *United States v. Bodcaw Co.*, 440 U.S. 202, 203, 99 S.Ct. 1066, 1067, 59 L.Ed.2d 257 (1979) (per curiam); *Dohany v. Rogers, State Highway Comm'r of Michigan*, 281 U.S. 362, 368, 50 S.Ct. 299, 302, 74 L.Ed. 904 (1930); *Monogahela Navigation Co. v. United States*, 148 U.S. 312, 326, 13 S.Ct. 622, 626, 37 L.Ed. 463 (1893). In the absence of legislation, other state courts are generally in accord with this view.[12] Thus, like the vast

---

11. The only case which is remotely relevant is *Southern Maryland Electric Co-operative, Inc. v. Albrittain*, 256 Md. 39, 259 A.2d 311 (1969), where the Court of Appeals held that the attorney's fees in a condemnation case become part of the costs paid by the plaintiff where the court determines the plaintiff cannot condemn the property or where the plaintiff abandons the suit.

12. *See, e.g., White v. State*, 294 Ala. 502, 319 So.2d 247, 248 (1975), *cert. denied*, 424 U.S. 954, 96 S.Ct. 1428, 47 L.Ed.2d 359 (1976) (condemnee's attorney's fees were not recoverable as costs); *County of Los Angeles v. Ortiz*, 6 Cal.3d 141, 98 Cal.Rptr. 454, 455–56, 490 P.2d 1142, 1143–44 (1971) ("costs" refer to "ordinary costs, such as sheriff's and jury fees, and not to fees of experts or attorneys"); *Holtz v. San Francisco Bay Area Rapid Transit Dist.*, 17 Cal.3d 648, 131 Cal.Rptr.

majority of other state courts, we await a legislative mandate to include attorney's fees as a compensable cost.[13]

Further, the Solkos' argument that, although the ordinary rule in Maryland is that litigation expenses are not recoverable absent statute or special circumstances, condemnation cases such as the case at bar are extraordinary

---

646, 653, 552 P.2d 430, 437 (1976) (established rule is that just compensation does not include attorney's fees; discretion to provide for award of these fees lies with the legislature); *9.88 Acres of Land v. State ex rel. State Highway Dep't.*, 274 A.2d 139, 140 (Del.1971) (there is no constitutional requirement that condemnee be reimbursed for counsel fees); *State v. Davis*, 53 Hawaii 582, 499 P.2d 663, 667 (1972) (attorney's fees are not embraced within meaning of "just compensation"); *City of Ottumwa v. Taylor*, 251 Iowa 618, 102 N.W.2d 376, 378 (1960) (attorney's fees are not encompassed in the term "just compensation" for land taken by eminent domain); *State by Spannaus v. Carter*, 300 Minn. 495, 221 N.W.2d 106, 107 (1974) (the overwhelming majority of courts have held that attorney's fees are not an element of "just compensation"); *State, By and Through Dep't of Highways v. Helehan*, 189 Mont. 339, 615 P.2d 925, 928 (1980) (attorney's fees are not ordinarly recoverable as costs in condemnation proceedings). *Contra, Dade County v. Brigham*, 47 So.2d 602, 604–05 (Fla.1950). Georgia was the only other state to determine judicially that "just compensation" included attorney's fees. The Georgia Supreme Court later overruled its decision. *White v. Georgia Power Co.*, 237 Ga. 341, 227 S.E.2d 385, 388 (1976) (per curiam), *overruled, DeKalb County v. Trustee, Decatur Lodge No. 1602, B.P.O. Elks*, 242 Ga. 707, 251 S.E.2d 243, 244 (1978);

**13.** *See, e.g., Ada County Highway Dist. By and Through Fairbanks v. Acarrequi*, 105 Idaho 873, 673 P.2d 1067, 1069 (1983) (absent statutory provision, condemnee is not entitled to reimbursement for counsel fees); *City of Luna Pier v. Lake Erie Landowners*, 175 Mich.App. 430, 438 N.W.2d 636, 637 (1989) (attorney's fees may not be awarded unless specifically authorized by statute or court rule); *Freeborn County v. Bryson*, 294 N.W.2d 851, 852 (Minn.1980) (attorney's fees are allowed in eminent domain proceedings only where authorized by statute); *Sipe v. Kalitowski*, 390 N.W.2d 910, 912 (Minn.App.1986) (attorney's fees allowed in eminent domain proceedings only as authorized by statute); *State Highway Comm'n of Mississippi v. Hayes*, 541 So.2d 1023, 1026 (Miss.1989) (attorney's fees may not be awarded unless specifically authorized by statute or court rule); *State By and Through Bontempo v. Pellini*, 75 N.J.Super. 161, 182 A.2d 566, 570 (1962) (costs in condemnation proceedings are not recoverable in absence of a statute); *Daviscourt v. Peistrup*, 40 Wash.App. 433, 698 P.2d 1093, 1102 (1985) (absent a statute, attorney's fees are not recoverable as "just compensation" under the Constitution's eminent domain clause).

cases. This contention is also more properly addressed to the Legislature than to the courts.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.