281 N.J. Super. 439 (1995)
658 A.2d 317
FRANKLIN J. KNECHT, PLAINTIFF-RESPONDENT,
v.
MANDEK CORP., A NEW JERSEY CORPORATION D/B/A COMPLETE BUSINESS OFFICES AND SERVICES, AND COMPLETE BUSINESS OFFICES AND SERVICES CORP., A NEW JERSEY CORPORATION, JOSEPH J. MURPHY, JR. AND RUSSELL F. ANDERSON, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 1995.
Decided May 19, 1995.
*441 Before Judges MICHELS,[1] STERN and KEEFE.
Roger W. Breslin, Jr., argued the cause for appellant (Beattie Padovano, attorneys; Mr. Breslin and Lynn B. Su, on the brief).
Peter F. Vogel argued the cause for respondent (Mr. Vogel, on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Plaintiff, a minority shareholder in defendant corporations, brought this action against defendants for wrongful termination of a lifetime employment contract (counts one and two), and to recover debts owed by the corporations to him (counts three and four). The first two counts were dismissed on summary judgment, and are not involved on this appeal. The complaint was subsequently amended to add six additional counts under N.J.S.A. 14A:12-7, after which defendants moved pursuant to N.J.S.A. 14A:12-7(8) to compel plaintiff to sell his interest as a minority shareholder in the corporations for fair market value. The motion was granted.
At a bench trial, the trial judge found for plaintiff on counts three, four and seven of the amended complaint. She found the *442 fair market value of plaintiff's stock in the Mandek Corporation (Mandek) to be $15,987.50 as of the date of the complaint, but reduced that figure by $15,100, the amount of unauthorized expenditures asserted in a counterclaim on which the judge found for defendants. The resulting judgment respecting count seven is not contested on this appeal.
The judge also entered judgment for plaintiff in the amount of his loans to the corporations, as sought by plaintiff in counts three and four. The debts were determined to be $130,131 owed by Mandek and $35,625 by Complete Business Offices and Services Corporation (CBOS), a related company. Together with prejudgment interest, judgment was entered against Mandek in the total amount of $169,642.76 and against CBOS in the total amount of $46,442.96. Respecting the debt obligation as embodied in the judgment on counts three and four, the judgment also provided that Mandek shall pay plaintiff $2,827.38 together with interest on the unpaid balance "each month for sixty (60) months with interest each month at the rate set forth in R. 4:42-11(a)(ii) on the unpaid balance until paid in full," and that CBOS shall pay $774.05 each month plus interest for a similar period, later amended to $182.61 due to a partial satisfaction.
Defendants argue that the trial court could not order repayment of the loans under N.J.S.A. 14A:12-7 because plaintiff did not bring an action under that statute, because it would be inequitable as the termination of plaintiff was based upon his misconduct, and because the loan obligation of the corporations to plaintiff and the individual defendants, who constitute the majority shareholders, was premised upon repayment when the corporations are financially able to make the repayment and satisfy the debts.
The parties made the following stipulation of facts for trial:
1. Mandek Corp. is a New Jersey corporation established by plaintiff Franklin Knecht in 1982 to operate an executive suite office business in Fort Lee, New Jersey. Mr. Knecht was initially the sole director and officer of Mandek Corp. and, with his wife, Marjorie, the owner of 100% of the capital stock.

*443 2. During 1983, defendants Joseph Murphy and Russell Anderson each paid $150,000.00 to Mandek Corp. and each became the owner of 37 1/2% of the capital stock. A shareholders agreement (Exhibit J-16 in evid.) was executed by Messrs. Knecht, Anderson and Murphy dated January 4, 1983. The monies contributed by Murphy and Anderson were allocated on the financial statements of Mandek Corp. between common stock, $40,000 and long term shareholder debt of $110,000 each.
3. From January 1983 to June 1989, plaintiff Knecht served as President and Chief Operating Officer of Mandek Corp. pursuant to Exhibit J-16.
4. In February 1986, Messrs. Knecht, Murphy and Anderson formed another New Jersey corporation, Complete Business Offices and Services Corp. to operate a second executive suite office business on Route 17 in Upper Saddle River, New Jersey. Mr. Murphy and Mr. Anderson each own 37 1/2% of the capital stock and Mr. Knecht owns 25% of the capital stock of CBOS.
5. From February 1986 until June 1989, plaintiff Franklin Knecht also served as President and Chief Operating Officer of CBOS.
6. Both Mandek Corp. and CBOS are Subchapter S corporations pursuant to the Internal Revenue Code.
7. The start-up of CBOS was financed by 2 bank loans totalling $240,000 which the 3 stockholders borrowed in their individual names from the National Community Bank. The loan proceeds were paid into CBOS by the 3 stockholders and allocated on the books of CBOS between capital and debt owed to stockholders. Repayment of these loans was made directly to NCB by CBOS each month, and the loan accounts of the 3 stockholders reduced accordingly. CBOS and Chestnut Ridge, Inc., a New Jersey corporation owned by Messrs. Murphy and Anderson which owned real estate in Saddle River, guaranteed repayment of these loans. These NCB loans were fully paid off by CBOS in 1992.
8. In June, 1989, plaintiff Franklin Knecht was terminated by defendants Murphy and Anderson as President and Chief Operating Officer of both Mandek Corp. and CBOS.
After the bench trial, the judge made findings which are not challenged on this appeal. She concluded that because plaintiff, without any individual defendants' knowledge or approval, gave himself a salary raise, acquired disability insurance, and placed his wife and one daughter "on the books" without their doing any work, defendants "may have been justified in terminating plaintiff as President of Mandek and CBOS." The judge found, however, that, after the termination, plaintiff maintained a "reasonable" "expectation of notice" concerning corporate activities and that defendants frustrated that expectation. She, therefore, ordered that the corporate defendants purchase plaintiff's stock. Her determinations on that subject and valuation of equity are not challenged on this appeal.
*444 The judge also found that items "held on the corporate books were to be treated as loans," and were, in fact, corporate debt, not capital. She held "it would be inappropriate to consider these sums to be equity when they have consistently been treated as loans." There is no claim by the defendants to the contrary.
The judge further held that the debt also had to be repaid, finding:
No notes were ever drafted or executed. Defendant argues they are not repayable until the company turns a profit. Plaintiff testified that he believed defendants would keep infusing money into the business as needed. That was unreasonable of plaintiff. Defendants argue that they do not need to repay plaintiff until the company makes a profit. That is unreasonable of defendants. Plaintiff will no longer be a shareholder of defendant. He should not be expected to be considered as an investor dependent on a profit making over which he has neither control nor input. It is fair and reasonable to require repayment of these loans upon an equitable basis.
There is no challenge to the judge's valuation of the debt. However, as already noted, defendants argue that because plaintiff did not bring this action under N.J.S.A. 14A:12-7, the judge could not order the repayment to plaintiff of the long-term debt. We disagree.
In December 1991, plaintiff successfully moved to file an amended complaint to add six counts seeking relief under the provisions of N.J.S.A. 14A:12-7. That section permits the court to take certain action where those in control of a corporation with "25 or less shareholders ... have acted oppressively or unfairly toward one or more minority shareholders." N.J.S.A 14A:12-7(1)(c). Upon motion of the corporation or a shareholder "who is a party to the proceeding," N.J.S.A. 14A:12-7(8) provides that:
the court may order the sale of all shares of the corporation's stock held by any other shareholder who is a party to the proceeding to either the corporation or the moving shareholder or shareholders, whichever is specified in the motion, if the court determines in its discretion that such an order would be fair and equitable to all parties under all the circumstances of the case.
Here, after the amended complaint was filed, defendants successfully moved for an order requiring plaintiff to "sell his shares of capital stock in defendants' Mandek Corp. and Complete Business Offices and Services Corp. to the respective corporations for *445 fair value," pursuant to N.J.S.A. 14A:12-7(8). Thus, even though the original complaint may not have sought relief under the statute, once defendants successfully moved to compel plaintiff to sell his shares, there was statutory jurisdiction to order relief pursuant to N.J.S.A. 14A:12-7(8) in a case commenced under section 12-7(1)(c). Whether plaintiff could have compelled defendants to purchase his stock is irrelevant in this procedural setting. The purchase here was "voluntary." See Brenner v. Berkowitz, 134 N.J. 488, 512-13, 634 A.2d 1019 (1993). Defendants sought to have the corporations purchase plaintiff's shares, and plaintiff does not object to the "buy out." See Id.
Defendants also object to their obligation to pay off the debt, as N.J.S.A. 14A:12-7(8) refers only to equity. They are indeed correct in the literal words of the statute. However, we do not believe that the statutory complex limits the equitable relief to a mere purchase of stock. This is particularly true in light of the trial judge's finding that plaintiff's reasonable expectations as a minority shareholder were frustrated when he was terminated as President, and not given the opportunity to exercise his equity interest in the corporations. Compare Exadaktilos v. Cinnaminson Realty Co., Inc., 167 N.J. Super. 141, 400 A.2d 554 (Law Div. 1979), aff'd 173 N.J. Super. 559, 414 A.2d 994 (App.Div. 1980), certif. denied, 85 N.J. 112, 425 A.2d 273 (1980) (20% shareholder did not perform his corporate obligation). A minority shareholder's debt interest could be frustrated by the majority's corporate resolutions and actions designed to make it impossible to pay dividends or the debt obligation. Thus, Brenner permits the fashioning of equitable as well as statutory remedies in favor of "oppressed" shareholders. See Brenner, supra, 134 N.J. at 512-13, 634 A.2d 1019. As Justice Garibaldi noted for the Court, "N.J.S.A. 14A:12-7 was not intended to supersede the inherent *446 common law power of the Chancery Division to achieve equity." Id. at 512, 634 A.2d 1019.[2] As she further stated:
Based on the permissive wording of the statute, when a statutory violation occurs [such as to an "oppressed" minority shareholder under section 12-7(1)(c)], a court retains its discretion to fashion equitable remedies. Such equitable remedies are valuable because they allow relief to be fashioned directly to redress the statutory violations shown. Equitable remedies
"are distinguished for their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties." [Sears Roebuck & Co. v. Camp, 124 N.J. Eq. 403, 411-12, 1 A.2d 425, 429 (E. & A. 1938) (quoting John N. Pomeroy, Equity Jurisprudence § 109 (John N. Pomeroy, Jr., ed., 4th ed. 1918)).]"
[Id. at 514, 634 A.2d 1019.]
See also Walensky v. Jonathan Royce International, Inc., 264 N.J. Super. 276, 280-81, 624 A.2d 613 (App.Div.), certif. denied, 134 N.J. 480, 634 A.2d 527 (1993) (decided before the Supreme Court opinion in Brenner). Hence, the trial judge was correct in concluding that she had the equitable power to order repayment of the debt.
Defendants argue, however, that the court's decision ordering the repayment was inequitable in this case because the minority shareholder was the one who defrauded the corporation, and was responsible for its poor financial condition due to his self-dealing, and because the court's decision is inconsistent with the equitable requirements of the statute regarding fair treatment for all shareholders. See N.J.S.A. 14A:12-7(8). Moreover, defendants insist that the proofs show that it was understood from the outset that the debt was only to be repaid when the corporations could financially afford to make the repayments, and that the judge, therefore, improperly "rewrote" the shareholders' agreement by ordering "accelerated repayment" in advance of the corporations' ability to do so.
*447 In her opinion, the judge determined that the debt should be repaid within five years.[3] She found that "the financial statements and posttrial submissions indicate that term to be appropriate." No reasons are stated for that conclusion, but we need not pass upon defendants' contentions that the record does not support the five-year pay-out schedule ordered by the judge. We must, in any event, remand for further proceedings. There are other issues concerning the terms of repayment which must also be explored.
In the absence of fraud, a shareholder may assert the same rights any third party would have against the corporation. See 12B Fletcher Cyclopedia of the Law of Private Corporations, § 5739 (1993). Therefore, if a shareholder lends money to the corporation, the corporation is the shareholder's debtor to the same extent the corporation would be to a third party lender. However, the debt owed a shareholder cannot be given preference over that owed to a third party. See Belcher v. Webb, 176 Wash. 446, 29 P.2d 702, 704 (1934). Moreover, while shareholders "may use the same methods as other creditors to collect bona fide corporate debts owed to them," they may do so "only so long as the corporation is solvent." See Snyder Electric Co. v. Fleming, 305 N.W.2d 863, 869 (Minn. 1981). When a corporation is "insolvent or on the verge of insolvency," no preference can defeat the corporation's obligations owed to a general creditor. Ibid.
The trial court must examine the equities of its order regarding the debt repayment. In exercising her equitable jurisdiction, the judge must do equity. She cannot order repayment of *448 debt to plaintiff if it will jeopardize the rights of other creditors. Nor can she do so at the expense of defendants, particularly in light of her holding that plaintiff's conduct in unilaterally raising his salary and using corporate assets for personal benefit precipitated the dispute. Cf. Snyder Electric, supra, 305 N.W.2d at 869.
Hence, in ordering the repayment of debt, the corporations' ability to survive must be considered. The corporations cannot be left on the "verge of insolvency" to the detriment of their surviving shareholders and other creditors, and at the risk of jeopardy to repayment of the same debt owed the individual defendants. In essence, the "buy-out," including the repayment of debt, "is warranted only when it would be `fair and equitable to all parties.'" See Brenner, supra, 134 N.J. at 514, 634 A.2d 1019 (quoting N.J.S.A. 14A:12-7(8)) (emphasis in original). The pay-out schedule must be fashioned to consider these factors, and accompanied by specific reasons for the resulting schedule.
The judgment under review is reversed with respect to the payment of debt, and the matter is remanded for a hearing regarding the corporations' ability to repay plaintiff's loan and the terms of repayment. We do not retain jurisdiction.
NOTES
[1] Judge Michels did not participate in the argument, but with the consent of the parties has participated in the disposition of the appeal.
[2] Neither party asserts that commencement of this case as a contract action in the Law Division should make a difference. See State v. Pellini, 75 N.J. Super. 161, 168, 182 A.2d 566 (App.Div. 1962).
[3] Despite the assertions at argument before us, the judge did not say there was any agreement by the parties on the issue. Rather, she stated:

Conferences were held with counsel seeking agreement as to a payment schedule. At that time a 5-year payout was suggested by the Court as reasonable. A further review of the financial statements and post trial submissions indicate that term to be appropriate. Payments are to commence January 1, 1994 and are to continue monthly through December 1, 1999. The totals are to be as of December 31, 1989 with interest at the Court mandated rate to continue on any unpaid balance.